Donna H. Lieberman, Esq.
Scott A. Ziluck, Esq.
HALPERIN BATTAGLIA RAICHT, LLP
555 Madison Avenue - 9th Floor
New York, New York 10022
(212) 765-9100
dlieberman@halperinlaw.net
sziluck@halperinlaw.net

*Attorneys for United States Debt Recovery, LLC VIII, L.P., and United States Debt Recovery X, L.P.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the matter of the application of

THE BANK OF NEW YORK MELLON (as Trustee under various Pooling and Servicing Agreements and Indenture Trustee under various Indentures), et al.,

                                                             Petitioners,

for an order, pursuant to CPLR § 7701, seeking judicial instructions and approval of a proposed settlement.

**Docket No.: 11 Civ. 5988 (___)**

**NOTICE OF INTENTION TO APPEAR AND OBJECT**

Removed From NY State Supreme Court, NY County (Index No: 651786/2011)

PLEASE TAKE NOTICE that United States Debt Recovery VIII, L.P., a Delaware Limited Partnership and United States Debt Recovery X, L.P., a Delaware Limited Partnership, (together the "USDR Respondents"), as Potentially Interested Persons in the above-captioned proceeding, commenced pursuant to Article 77 of the New York Civil Practice Law and Rules in the Supreme Court of the State of New York, County of New York, and removed to this Court by the filing of a Notice of Removal on August 26, 2011, intend to appear and object to the Settlement proposed by Bank of New York Mellon (the "Trustee") pursuant to the orders of the New York State Supreme Court dated June 29, 2011 and August 5, 2011, on the grounds set

forth herein.  The USDR Respondents do not have sufficient information at this time to fully evaluate the Proposed Settlement.  By filing this written notice and objection, the USDR Respondents preserve any and all rights they may have with respect to this proceeding and the Proposed Settlement, including the right to seek discovery, to supplement this objection, to intervene in this proceeding, and to take any other action they deem appropriate.

For its objection to the proposed settlement, the USDR Respondents state as follows:[1]

1.   On June 29, 2011, The Bank of New York Mellon (the "Trustee"), as trustee for 530 RMBS trusts containing mortgages sold and/or serviced by Countrywide Home Loans, Inc. and its affiliates (together, "Countrywide") filed a petition with this Court (the "Proposed Settlement Petition") seeking judicial instruction and approval of a proposed settlement with Countrywide and its parent, Bank of America corporation (together with its affiliates, "Bank of America").

2.   The terms of the proposed settlement include:

   a.   Full Releases of Countrywide and Bank of American of "put back" liability for various RMBS trusts that may exceed $50 billion;

   b.   "De-Facto" Releases for the Bank of New York Mellon in its role as Trustee by limiting review of their conduct to performance under the proposed settlement agreement;

   c.   Payment of certain parties' legal fees in the amount of $85 million; and

---

[1] This objection is based solely on the facts concerning the Proposed Settlement presently known to the USDR Respondents.  The USDR Respondents expressly reserve the right to modify or supplement this objection after they have had the opportunity to conduct discovery should they deem it appropriate.  The USDR Respondents also herein incorporate by reference the objections filed by other Potentially Interested Persons to the Proposed Settlement.

2

      d.    Payment of $8.5 Billion to be allocated to various RMBS trusts.

3.    The USDR Respondents own interests in notes in the following Countrywide RMBS pool certificates and are an affected party:

    a.    CWL2006-16 M3:    $5.00 million

    b.    CWL 2007-4 M6:    $5.00 million

    c.    CWL 2006-3 M4:    $4.09 million

    d.    CWL 2007-5 M2:    $4.00 million

    e.    CWL 2006-23 M1:    $5.00 million

    f.    CLW 2006-BC5 M1:  $5.00 million

    g.    CWL 2006-8 M2:    $10.00 million

4.    "Facts" alleged by Petitioners in support of the proposed settlement include evidentiary support of several experts based on the following summary of facts and protocol to prove the settlement is reasonable by utilizing the following guidelines and expert opinion methodology:

    a.    Determine Countrywide RMBS Range of Losses

        i.    Existing Losses; and

        ii.    Estimate Future Losses (statistical model and loss severity).

    b.    Estimate probably range of gross settlement values.  This is based on an "opinion" by RRMS Advisors (Mr. Brian Lin) dated June 7, 2011 that a gross settlement of claims against Bank of America using a 45-60% loss severity assumption is reasonable at a range of $8.8 to $11 Billion.  [Note that actual loss severity numbers are substantially higher than the 45-60% loss severity assumed in the opinion resulting in dramatically higher

3

        reasonable settlement numbers.]

    c.    The use of "Breach Rates" and "Success" by utilizing actual numbers of Bank of America.  [Note that these numbers are not accurate since Bank of America can simply refuse to repurchase a loan and change the "Success" rates.  Actual "Breach Rate" and Success Rate numbers or in the range of 60% for Breach Rates and 50-75% for Success Rates according the RRMS Advisor opinion and the author Mr. Lin was NOT given access to any documents or specifics pertaining to underwriting review.

    d.    An opinion of the "value" of Countrywide based on an "expert" opinion by Capstone that the maximum economic value that BNYM could recovery from Countrywide is $4.8 billion assuming a $1.3 Billion secured note would be paid.  [The analysis does not identify who is the holder of the secured note and whether the note is owed to an insider such as Bank of America.].

    e.    An opinion by Professor Robert Daines that Bank of America should not be liable under legal theories of successor liability in the states of New York, Delaware unless a court finds a "de-facto" merger for the sins of Countrywide.

5.    There is no evidence before the Court of the Trustee's analysis of total "Put Back" liability of loans, what information it possesses, or any details of demands for repurchase to Bank of America.  Thus, the Court and the USDR Respondents do not know whether Bank of New York Mellon has "Put Back" $100 billion (or $1 billion) of loans to Bank of America.  In short, the parties have not quantified the true amount of the liability being compromised.

6. The USDR Respondents urge the Court to utilize the following guidelines in evaluating the settlement.

    a. Ascertain whether the Trustee has fulfilled its duties in properly "Putting Back" to Bank of America all appropriate liabilities. The Petitioners do no identify how many loans are in default, what percentage the Trustee beliefs has breaches of warranties issues or claims and whether formal demand has been made to repurchase the loans. In short, what has the Bank of New York Mellon done so far?

    b. Ascertain the reasonable range of damages for Countryside alleged breaches based on losses for existing loans and (2) estimated losses for future claims.

    c. Ascertain the reasonable range of damages for Countrywide specifically related to Countrywide's conduct in mortgage origination servicing including claims of document irregularities, securitization issues, title issues, underwriting issues (i.e. issues related to violations of representations and Warranties in the Pooling and Servicing Agreements).

    d. Ascertain the reasonable range of damages for Bank of America (as opposed to Countrywide) specifically related to Bank of America's conduct in mortgage servicing including allegations of questionable and potentially fraudulent foreclosure documentation practices including perjury and violation of state deceptive acts and practices. For example, Bank of America initially suspended foreclosure sales on October 8, 2010 in all 50 states after reviewing its internal foreclosure proceeding and

subsequently re-filed 102,000 foreclosure affidavits. [All 50 state attorney general offices have pending investigations addressing such issues.] Damages from such conduct by Bank of America are wholly irrelevant to the question of "Put Back" liability based on breaches of warranties and representations.

7. The USDR Respondents raise the following issues and facts in opposition to the Proposed Settlement, based upon the facts as they are presently understood:

    a. The proposed Settlement addresses only "Put Back" liability of Bank of America/Countrywide but wholly fails to address (but release anyway ) claims relating to mortgage servicing irregularities, fraud and similar wrongdoing by Bank of America and Countrywide which liability has not been quantified by Petitioners.

    b. Each RMBW trust is a separate legal entity and a "group" settlement is inappropriate. For example, just as an attorney owes a duty of undivided loyalty to each client, and hence cannot settle individual tort claims of several clients against one insurance company by a single group settlement, neither can the Trustee settle claims of breach of warranty representations held by one RMBS trust in a group settlement of all RMBS trusts where the damages are different. This is an inherent conflict of interest.

    c. Actual Losses by RMBS trusts in which USDR entities are parties are dramatically higher than losses as applied to a "Group" analysis. Thus, what is reasonable for one RMBS trust may be dramatically unreasonable

        for another.

d.     The settlement results in a "de-facto" release of the Trustee by limiting any review of its conduct to performance under the Settlement Agreement.

e.     The settlement releases all tort claims against Bank of America (as opposed to Countrywide) even though significant claims exist based on negligence and gross negligence in the handling and duties of Bank of America in servicing <u>after</u> the acquisition of Countrywide by Bank of America. There is no analysis of such liability before the Court.

f.     Erroneous data in support of the Petition including failure of the Trustee to give Mr. Lin, the RRMS Advisor, managing director access to Bank of America documents pertaining to actual "Breach Rates" and "Success Rates" for the portfolios at issue render his assumption of Severity Rates of 60%, Breach Rates of 36% and Success Rate of 40% vastly understated. The result is a dramatic reduction in the reasonable estimate of settlement values. Even Mr. Lin acknowledges "Aggressive" Breach rate and Success Rate assumptions. [See Settlement Amount Opinion dated June 7, 2011 by Brian Lin, RRMS Advisors].

g.     Bank of American is guilty of "Unclean Hands" and in refusing to allow examination of employees is hindering civil and criminal investigations such that the reasonableness of the settlement cannot be ascertained. See Forbes Article: (http://www.forbes.com/sites/halahtouryalai/2011/06/14/bank-of-america-cant-escape-mortgage-problems/).

    h.    Bank of America is responsible for serious, possible criminal violations of law in its servicing (irrespective of Countrywide "Put Back" claims).

    i.    The original securitization of many loans by Countrywide failed, resulting in securities law violations. See Fortune Article at the following web address: (http://finance.fortune.cnn.com/2011/06/03/at-bank-of-america-more-incomplete-mortgage-docs-and-more-questions/).

    j.    Bank of America may have permitted subordination of perjury in seeking enforcement of certain mortgage documents. See November Congressional Oversight Panel, Oversight Report, dated November 16, 2010.

    k.    Bank of American has potential liability for improperly refusing to modify loans under mandated criteria since Bank of American was a beneficiary of TARP including what the United States Treasury described as "exception assistance" such that bank of America failed to meet its legal obligations in dealing with mortgage servicing and modification programs. See November Oversight Report, dated November 16, 2010.

    l.    A reasonable settlement amount by Bank of America is multiples of the proposed settlement figure, i.e., in excess of $20 billion.

8.    Documentary Evidence to Oppose the Proposed Settlement consists of:

    a.    All prospectuses prepared for the issuance of each Countrywide RMBS trust that is the subject of the settlement in which USDR entities are participants.

    b.    All monthly reports from the Trustee since the inception regarding the

        Trusts in which USDR Respondents are participants.

    c.    The November 16, 2010 Congressional Oversight Panel report examining the consequences of Mortgage Irregularities.

    d.    All documentary evidence proffered by Petitioners.

    e.    All such other and further relevant documentary evidence as may be discovered between now and the hearing on approval of this settlement.

    f.    All evidence to be produced in this proceeding.

9.    Based on the foregoing, the USDR Respondents respectfully request that the Court permit them to participate in discovery and to the extent necessary, the USDR Respondents respectfully request that the Court enter an order confirming that the USDR Respondents be permitted to participate in this proceeding to determine the scope of discovery and the resulting discovery process approved by the Court to evaluate the reasonableness of the Proposed Settlement.  The USDR Respondents reserve their rights to modify and/or supplement this objection.

Dated: New York, New York
August 30, 2011

        HALPERIN BATTAGLIA RAICHT, LLP
        *Attorneys for Attorneys for United States Debt Recovery, LLC VIII, L.P., and United States Debt Recovery X, L.P.*

        By: */s/ Donna H. Lieberman*
        Donna H. Lieberman, Esq.
        Scott A. Ziluck, Esq.
        555 Madison Avenue, 9th Floor
        New York, New York 10022
        (212)765-9100
        dlieberman@halperinlaw.net
        sziluck@halperinlaw.net

        US DEBT RECOVERY, LLC
        Nathan E. Jones, Esq.
        General Counsel
        940 Southwood Blvd.
        Suite 101
        Incline Village, NV 89451
        (775) 832-5250