UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the matter of the application of<br><br>THE BANK OF NEW YORK MELLON (as Trustee under various Pooling and Servicing Agreements and Indenture Trustee under various Indentures), *et al.*,<br><br>        Petitioners,<br><br>        -against-<br><br>MARY ELEN IESU, MILDRED BARRETT, CHERYL G. PHILLIPS and MICHAEL P. CARY, on behalf of themselves and all those similarly situated,<br><br>        Intervenors-Respondents. | 2011-cv-5988 (WHP)<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE BY MARY ELLEN IESU, MILDRED BARRETT, CHERYL G. PHILLIPS and MICHAEL P. CARY** |

## TABLE OF CONTENTS

                                              **PAGE**

Preliminary Statement ....................................................................................................... 1

Argument ........................................................................................................................... 2

I.     Rule 24(a)(2) intervention applies when the movant shows an interest that may be impaired by a particular proceeding. .................................................................... 2

       A.    The Homeowners have an interest in ensuring that their contractual mortgage and common law rights are not damaged without their consent or input. ........................ 3

       B.    The Homeowners' rights under their contracts will be impaired by the terms of the Settlement Agreement. ................................................................................. 6

II.    The Homeowners are also entitled to intervene under Rule 24(b). .................................... 9

III.   The Homeowners should be allowed to intervene in the proposed settlement to ensure that it is fair and reasonable to all interested parties. ......................................................... 10

# TABLE OF AUTHORITIES

**Cases** — **Page**

*Antonelli v. New Jersey*, 419 F.3d 267 (3rd Cir. 2005) .......... 5

*Brennan v. New York City Bd. of Educ.*, 260 F.3d 123 (2nd Cir. 2001) .......... 2, 3, 6

*Clark v. Putnam Cty.*, 168 F.3d 458 (11th Cir. 1999) .......... 7

*Dawson v. Pastrick,* 600 F.2d 70 (7th Cir. 1979) .......... 6

*EEOC v. AT&T*, 506 F.2d 735 (3rd Cir. 1974) .......... 5

*EEOC v. Local 368*, No. 71-cv-2877, 2003 U.S. Dist. Lexis 13190 (S.D.N.Y. July 30, 2003) .......... 10

*Fernandez & Hnos, Inc. v. Kellogg USA*, 440 F.3d 541 (1st Cir. 2006) .......... 4, 7

*Forest Conservation. Council v. United States Forest Service*, 66 F.3d 1489 (9th Cir. 1995) .......... 4

*Herdman v. Town of Angelica*, 163 F.R.D. 180 (W.D.N.Y. 1995) .......... 3

*Hoblock v. Albany Cty. Bd. Of Elections*, 233 F.R.D. 95 (N.D.N.Y. 2005) .......... 2, 3

*Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 738 F.2d 82 (8th Cir. 1984) .......... 5

*Oneida Indian Nation of Wisc. v. Oneida of the Thames Band*, 732 F.2d 261 (2nd Cir. 1984) .......... 7

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) .......... 4

*Sierra Club v. United States Army Corps of Engineers*, 709 F.2d 175 (2nd Cir. 1983) .......... 6

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) .......... 3, 4

*Turn Key Gaming, Inc. v. Oglala Sioux* Tribe, 164 F.3d 1080 (8th Cir. 1999) .......... 3

*United States v. City of Hialeah*, 140 F.3d 968 (11th Cir. 1998) .......... 6

*United States Postal Service v. Brennan*, 579 F.2d 188 (2nd Cir. 1978) .......... 3

*United States v. Szczygiel*, 373 Fed. App'x 216 (3rd Cir. 2010) .......... 5

*Williston v. Eggleston*, No. 04-cv-4454, 2005 U.S. Dist. Lexis 14307 (S.D.N.Y. July 14, 2005) .......... 9, 10

**Statutes**

FED.R.CIV.P. 24 .......... *passim*

**Preliminary Statement**

The loan servicing process for hundreds of thousands of loans which Bank of New York Mellon ("BNYM") claims are beneficially owned by 530 Loan Trusts has run amok. Bank of America ("BoA"), agent for BNYM and the Loan Trusts, through incompetence, inattention or malfeasance, has lost control of the process. BoA generally does not know how much is truly owed on a loan, whether the loan is truly in default, or even the identity of the true owner of the debt – the entity which has the right to the loan payment and the right to foreclose. Thousands of borrowers whose loans are being serviced by BoA (the "Homeowners") are in the process of being foreclosed without cause, illegally and often with inadequate or even forged documentation. In short, the system is broken.

BNYM and BoA seek to "improve" this broken system by doing more of the same, except faster. The "solution" imposed by this proposed settlement will cause irremediable harm to the Homeowners: they will be evicted wrongfully from their homes; pursued for deficiency judgments by the Loan Trusts, debt buyers or others who claim to be the true and actual owners of the loans; their credit will be ruined; and they will be hounded to pay abusive and grossly unfair fees and penalties which they do not owe in the first place. All this, and yet the proponents of the proposed settlement say that Homeowners have no legal interest in this matter.

Under Rule 24(a)(2), a timely intervention application must be allowed where the applicant's interest in the action might as a practical matter be impaired by disposition of the case, and existing parties do not adequately represent that interest. Both elements are satisfied in this case. BNYM and a group of institutional investors seek judicial approval of a settlement with BoA that, if allowed, will bless a proposal which:

- Requires referral of loans in default to foreclosure subservicers which, by reason of the Master Servicer and Subservicer compensation structures, will ensure that Homeowners are forced at an escalated rate into preventable and even wrongful foreclosure;

- Penalizes BoA for not seeking early home foreclosures, again quickening an increased number of abusive and illegal home foreclosures;

- Imperils meaningful review of foreclosure alternatives;

- Increases the foreclosure fees paid by Homeowners;

- Endorses the use of subservicers who will operate under standards which do not require use of correct servicing policies; and

- Conflicts with the federal HAMP program by requiring simultaneous foreclosure and (purported) modification programs.

The question now is whether Homeowners, whose interests are not currently represented in the proposed settlement, and whose rights are being trampled by the current parties, should be permitted to intervene.

## Argument

### I. Rule 24(a)(2) intervention applies when the movant shows an interest that may be impaired by a particular proceeding.

The Homeowners – whose contractual rights are being damaged in the name of providing financial gain to BNYM, BoA and a select group of institutional investors – are entitled to intervene under Rule 24(a)(2). It is undisputed that an essential element of the proposed settlement is a series of servicing modifications to the Homeowners' loans.

Second Circuit law governing Rule 24(a)(2) intervention provides:

> To intervene as of right, a movant must: (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.

*Brennan v. New York City Bd. of Educ.*, 260 F.3d 123, 128-29 (2nd Cir. 2001) (citation omitted); *see also Hoblock v. Albany Cty. Bd. Of Elections*, 233 F.R.D. 95, 97 (N.D.N.Y. 2005) (there is no separate 'standing' requirement in the Second Circuit; if the standards of Rule 24(a) are met and the original parties have standing to maintain the dispute, then the interveners may join)

2

(citing *United States Postal Service v. Brennan*, 579 F.2d 188, 190 (2nd Cir. 1978)).[1]  Because a federal court should be open to those impacted by its proceedings, "Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor."  *Turn Key Gaming, Inc. v. Oglala Sioux* Tribe, 164 F.3d 1080, 1081 (8th Cir. 1999) (citation omitted) *cf. Hoblock*, 233 F.R.D. at 98 (district court has broad discretion in deciding intervention under Rule 24).[2]

These factors are considered together, not discretely.  A strong interest warrants intervention with a lesser impairment, and vice-versa.  *Herdman v. Town of Angelica*, 163 F.R.D. 180, 185 (W.D.N.Y. 1995) (citations omitted).  Here, the Homeowners' interest is strong – after all, it is their mortgage contracts that are being impaired and their *homes* that are being foreclosed on.  Moreover, the impairment is equally weighty as the frequency, speed and costs of foreclosures on Homeowners will escalate sharply if the settlement is implemented.

### A. The Homeowners have an interest in ensuring that their contractual mortgage and common law rights are not damaged without their consent or input.

The "interest" required by Rule 24 is not a property right, or a property interest, but simply "an interest relating to the property or transaction which is the subject of the action." *Brennan*, 260 F.3d at 130.  In its Article 77 Petition, BNYM explicitly acknowledges that an essential element of the deal it has struck with BoA is a series of modifications to the contracts that the Homeowners entered into when obtaining their loans.  *See, e.g.,* BNYM Petition, ¶ 1 ("This settlement requires … the implementation of meaningful mortgage loan servicing

---

[1] BNYM and the Investors admit the Homeowners' motion was timely and do not contend that the Homeowners' interests are being represented in this action.  *See* BNYM Opposition, p. 3 ("The Borrowers fail to satisfy the second and third prongs [of the intervention test].").

[2] Although the Second Circuit has not explicitly addressed the issue, numerous other Circuit Court of Appeals have held that the court is required to accept as true all non-conclusory allegations made in support of a motion to intervene.  *See, e.g., Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001) (following "the unanimous precedent" from the Fourth, Fifth, Seventh, Eighth and D.C. Circuits)

improvements."); ¶ 11 ("The Settlement Agreement … requires BAC HLS to implement, among other things, servicing improvements... and will provide a mechanism for [BoA] to transfer high-risk loans to subservicers for more individualized attention."); ¶ 37 ("There are two principal components to the Settlement – the Settlement Payment and the servicing improvements.").

BNYM, BoA and the Investors refer to these changes as 'improvements.' The report by the National Consumer Law Center (the "NCLC Report")[3] reaches a very different conclusion:

> Homeowners whose mortgage loans are serviced by Bank of America will be harmed by the settlement. The Settlement Agreement, if allowed to proceed, will speed up foreclosures, perpetuate existing servicing abuses in the system, and undermine federal programs designed to stabilize the housing market. The touted servicing "improvements" aim to increase the speed of foreclosure but fail to set standards to protect homeowners from wrongful or unnecessary foreclosure or abusive servicing.

*See* NCLC Report, p. 1. The proposed altering of these contractual rights gives the Homeowners the requisite "interest" in this proceeding.

A long line of cases has found it proper for a party to intervene under Rule 24(a)(2) to protect contractual rights which are being modified by third parties. *See, e.g., Fernandez & Hnos, Inc. v. Kellogg USA*, 440 F.3d 541, 545 (1st Cir. 2006) ("An intervenor has a sufficient interest in the subject of the litigation where the intervenor's contractual rights may be affected by a proposed remedy."); *Southwest Center*, 268 F.3d at 820 ("Contract rights are traditionally protectable interests."); *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1495 (9th Cir. 1995) (allowing intervention where contracts with the federal government could be impacted in a case seeking an injunction preventing further logging activities); *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (allowing timber purchasers and processors to

---

[3] This report is attached as *Exhibit A* to the Class Action Complaint filed in this Court and designated as a related proceeding, styled *Iesu, et al. v. Bank of New York Mellon, et al.*, No. 11-cv-6078 (Docket No. 1).

4

intervene because they "have legally protectable property interests in existing timber contracts that are threatened by" the requested injunctive relief sought); *Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 738 F.2d 82, 84 (8th Cir. 1984) (teachers intervened in a case seeking to consolidate school districts, since the contracts the teachers had with their districts gave them an interest in the outcome of the litigation).

The primary case relied upon by BNYM involved an attempt by a firefighter to change a consent decree entered more than 25 years earlier. *See United States v. Szczygiel*, 373 Fed. App'x 216 (3rd Cir. 2010). In 2005, Szczygiel tried to settle a discrimination case by agreeing with his employer if he scored highest on the next exam he would be appointed Deputy Fire Chief. *Id.* at 218. The settlement was voided because it violated a 1980 consent decree entered in a federal court action that gave the appointing authority discretion to choose from the top 3 scorers on the exam. *Id.* at 219. Szczygiel tried to intervene into the federal court that had approved the 1980 consent decree. *Id.* at 220. The court ruled that the reasons for Szczygiel's requested intervention were "not altogether clear to us," but that he lacked standing to enforce the terms of an ancient decree to which he was neither a party nor intended beneficiary. *Id.*[4]

The present facts are readily distinguishable. Unlike Szczygiel, who sought to intervene 25 years after the Court entered the consent decree, the Homeowners seek to intervene *before* the Court passes on the fairness of the proposed settlement. Unlike Szcyzgiel, who was not impacted when the fairness of the consent decree was being considered by the Court, the Homeowners stand to be harmed today if the proposed settlement is approved.

---

[4] The Third Circuit relied upon *Antonelli v. New Jersey*, 419 F.3d 267 (3rd Cir. 2005), another case dealing with the standing to challenge a 1980 Consent Decree and a court-approved exam thereunder. *Id.* at 273. These cases stand for the unremarkable proposition that courts should be hesitant to allow third parties, years after a consent decree is entered and implemented, to challenge its terms. They do not speak to the issue of whether interested parties may intervene *before* the court approves a proposed settlement.

5

Numerous courts, including the Second Circuit, have specifically allowed intervention in circumstances akin to those facing this Court – *i.e.,* when being asked to pass on the fairness of an underlying settlement. *See Brennan*, 260 F.3d at 133 (allowing white employees claiming to be adversely impacted by proposed race/ethnicity/gender-conscious settlement to intervene, conduct discovery and be heard at the fairness hearing); *see also United States v. City of Hialeah*, 140 F.3d 968, 982 (11th Cir. 1998) ("One party to a collective bargaining agreement cannot use the device of a nonconsensual consent decree to avoid its obligations, which the other party negotiated and bargained to obtain."); *Dawson v. Pastrick,* 600 F.2d 70, 75 (7th Cir. 1979) (since proposed remedy could impact firefighters' seniority rights, union allowed to intervene).[5]

### B. The Homeowners' rights under their contracts will be impaired by the terms of the Settlement Agreement.

It is undisputed that the proposed settlement will result in substantial modifications to the manner in which the Homeowners' loans are serviced. BoA and BNYM admit this. What *is* disputed is the extent to which these modifications will either benefit or harm the Homeowners. BNYM characterizes the modifications as "improvements." They are not. The NCLC Report reveals the real harm these "improvements" inflict on Homeowners. The resolution of this question, however, is not relevant to this motion.

As the Second Circuit has noted, "except for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention." *Oneida Indian Nation of Wisc. v. Oneida of the Thames Band*, 732 F.2d 261, 265 (2nd Cir. 1984); *see also Clark v. Putnam Cty.*,

---

[5] The other cases referenced by BNYM are similarly distinguishable. *See, e.g, Sierra Club v. United States Army Corps of Engineers*, 709 F.2d 175 (2nd Cir. 1983) (purported interest in protecting its business reputation was insufficient where the underlying case did not even allege wrongdoing on the part of the proposed intervenor).

168 F.3d 458, 462 (11th Cir. 1999) ("It may well be that the proposed interveners' asserted *interest* is not a *right*. But that is a question of the merits of their defense, and whether an applicant for intervention will prevail in a suit is not an element of intervention by right." (emphasis in original)). In order to intervene, it is enough that the Homeowners demonstrate a cognizable interest in the proceeding, which they have done.

The proposed settlement will detrimentally impact the Homeowners' contractual rights. This more than satisfies the "practical impediment" requirement of Rule 24(a)(2). *See Fernandez*, 440 F.3d at 545; *see also* FED.R.CIV.P. 24 advisory committee notes ("if an absentee would be substantially affected in a practical sense by the determination made in the action, he should, as a general rule, be entitled to intervene").

BNYM attempts to mislead this Court into believing that it has no role in the harm that will come to Homeowners from the Settlement Agreement by inaccurately stating that the Homeowners complaints are with Countrywide. Nothing could be further than the truth. BNYM claims that it rightfully serves as Trustee of the true beneficial owners of the Homeowners' loans. They also claim that Bank of America is acting properly as the agent of the Loan Trusts. Whether or not these claims are accurate remains to be proven, but these parties cannot hide their roles while they collect payments and foreclose on the Homeowners.

BNYM and the investors also argue that court approval of the proposed settlement would not impair any of the Homeowners' rights because the contracts themselves have an implied duty of good faith and fair dealing and the Homeowners would be free to file a separate action if that duty is breached. *See* BNYM Opposition, pp. 6-7. They are wrong for at least five reasons.

First, the proposed settlement finally admits in ¶ 6 of the Settlement Agreement what judges across the country have already learned – BNYM and BoA do not know if the

7

Homeowners' loans were ever properly transferred into the Loan Trusts. In other words, the Loan Trusts may have no right to the payment stream much less a right to foreclose, yet they seek court approval to help them foreclose quickly before making that threshold determination.

Second, the Settlement Agreement will create a host of problems which do not currently exist. BoA and BNYM propose entering into contracts with 8 to 10 subservicers creating a whole set of obligations and burdens on investors and Homeowners alike. The servicing modifications will lead to increased foreclosures, additional improper fees and an overall increase in the general harm to the Homeowners. *See* NCLC Report. All of these additional problems can, and should, be avoided. The Court should allow intervention to ensure that it does not approve a redesigned scheme that will place further hardships on the Homeowners.

Third, the harm caused by the servicing modifications may not be capable of being corrected in a later judicial proceeding. The harm caused by wrongful foreclosures, excessive and improper fees, and other servicing abuses threatened by the proposed settlement would be difficult to reverse, and other courts would find it difficult and even impossible to make affected Homeowners whole again. Importantly, no justification has been given for rushing the proposed settlement through the judicial approval process and risk subjecting Homeowners to a litany of problems that should never occur in the first place.

Fourth, if the Court allows BNYM and BoA to modify the terms of the contracts (*i.e.,* changing the means by which servicing of the loans takes place), the Homeowners would be prejudiced in any later action. When faced with a claim that they were servicing the loans improperly, BoA and any subservicers would counter with the defense that they were simply performing the tasks that the Settlement Agreement provided – and which the Court approved of. Indeed, this defense is previewed in BNYM's Article 77 Petition itself, which states:

8

> **When [the servicer], in implementing a modification or other loss mitigation strategy, considers the factors set forth in the loss mitigation improvements portion of the Settlement Agreement**, or acts in accordance with policies or practices that BAC HLS is then applying to its or any of its affiliates' 'held for investment' portfolios, **BAC HLS will be deemed to be in compliance with the Governing Agreements**.

*See* BNYM Article 77 Petition, ¶ 44 (emphasis added).[6] In short, by obtaining judicial approval of their settlement, they would insulate themselves from future claims – all without ever having to answer to the Homeowners whose rights they are modifying to serve their own needs.

Fifth, it is extremely inefficient to ask this Court to devote time and resources now to assessing the 'fairness' of the servicing modifications in a vacuum (*i.e.,* without a contrary voice), and then ask a series of other courts to address that same issue multiple times down the road. If such courts later find the servicing modifications to be, as set forth in the NCLC Report, unfair, they will be hard pressed to provide an adequate remedy, as the damage caused by these modifications in many cases is irreversible. These questions can be avoided if the same Court that is being asked to bless the proposed settlement is afforded a full picture of the situation.

## II.     The Homeowners are also entitled to intervene under Rule 24(b).

Under Rule 24(b), the court may allow intervention whenever the intervenor's claim and the original action share a common question of law or fact. FED.R.CIV.P. 24(b)(2). Another factor is whether intervention would assist in developing and resolving the legal and factual disputes in the proceeding. *Williston v. Eggleston*, No. 04-cv-4454, 2005 U.S. Dist. Lexis 14307 at *3 (S.D.N.Y. July 14, 2005) (citations omitted). As is the case with Rule 24(a)(2), permissive intervention under Rule 24(b) lies within the sound discretion of the district court, and in exercising that discretion Rule 24(b) is to be liberally construed. *See Williston* 2005 U.S. Dist.

---

[6] As noted in the Article 77 Petition, the Governing Agreements impose servicing obligations on the Master Servicer. *See* BNYM Article 77 Petition, ¶ 5.

9

Lexis 14307 at *3 (citations omitted); *EEOC v. Local 368*, No. 71-cv-2877, 2003 U.S. Dist. Lexis 13190 at *5-6 (S.D.N.Y. July 30, 2003) ("Ultimately, the degree of discretion granted to a trial court in considering permissive intervention is extremely deferential.").

There is commonality between the objections raised by the Homeowners and the relief sought by BNYM. BNYM asks this Court to bless their proposed contractual modifications, while the Homeowners ask this Court to protect their contractual rights. There is no other party to this action who is in the position of offering a view contrary to that of BNYM. It is certainly not in the interests of BoA or the investors to challenge BNYM on the fairness of a revised servicing structure designed to give them a financial windfall at the expense of the Homeowner. Only the Homeowners have the incentive and the interest to make this necessary challenge.

### III. The Homeowners should be allowed to intervene in the proposed settlement to ensure that it is fair and reasonable to all interested parties.

The proposed settlement was negotiated without the participation of the Homeowners, who will see dramatic and detrimental changes made in the servicing of their loans. The parties to the proposed settlement seek to preclude those Homeowners from even being heard with respect to the proposed changes. If the Petitioners want to settle the claims amongst themselves without impacting the Homeowners' contracts, they are free to do so. If, as they propose, they want to settle those claims by altering the contractual rights of the Homeowners, the Homeowners must be given a seat at the table.

For all of the foregoing reasons, Homeowners respectfully request that the Court grant their motion to intervene.

Dated: September 20, 2011                              Respectfully submitted.

/s/ **Keith M. Fleischman**
Keith M. Fleischman, Esq.
June H. Park, Esq.
Francis P. Karam, Esq.
FLEISCHMAN LAW FIRM
565 5th Avenue, Seventh Floor
New York, NY 10017
(212) 880-9567
keith@flesichmanlaw.com
hta@fleischmanlaw.com
jpark@fleischmanlaw.com
frank@flesichmanlaw.com

Shelia Canavan, Esq.
LAW OFFICES OF SHELIA CANAVAN
70 Desert Solitaire Road
Moab, Utah 84532
(435) 259-3593
canavansheila@citlink.com

Don Barrett, Esq.
Brian Herrington, Esq.
Katherine Riley, Esq.
David McMullan, Esq.
BARRETT LAW GROUP, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
(662) 834-9168
dbarrett@barrettlawgroup.com
bherrington@barrettlawgroup.com
kbriley@barrettlawgroup.com
dmcmullan@barrettlawgroup.com

Charles Barrett, Esq.
(Admitted in New York)
BARRETT LAW GROUP, P.A.
6518 Highway 100
Nashville, TN 37205
(615) 515-3393
charles@cfbfirm.com

11

Richard R. Barrett, Esq.
BARRETT LAW GROUP, P.A.
1223 Jackson Avenue
Suite 203
Oxford, MS 38655
(662) 307-7000
rrb@rrblawfirm.com

*Attorneys for Homeowners and the Class*