UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the matter of the application of<br><br>THE BANK OF NEW YORK MELLON (as Trustee under various Pooling and Servicing Agreements and Indenture Trustee under various Indentures) *et al.*,<br><br>       Petitioners,<br><br>              -against-<br><br>WALNUT PLACE LLC *et al.*,<br><br>       Intervenor-Respondents. | 11-cv-5988(WHP) |

## SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE BANK OF NEW YORK MELLON'S
## <u>MOTION TO REMAND</u>

| | |
|---|---|
| DECHERT LLP | MAYER BROWN LLP |
| Hector Gonzalez | Jason H. P. Kravitt |
| James M. McGuire | Matthew D. Ingber |
| 1095 Avenue of the Americas | 1675 Broadway |
| New York, New York 10036 | New York, New York 10019 |
| (212) 698-3500 | (212) 506-2500 |

*Attorneys for Petitioner*
*The Bank of New York Mellon*

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

RESPONSE TO THE COURT'S QUESTIONS ...............................................................1

    I.    The Trustee's Only Implied Duties Are to Avoid Conflicts and to Perform Ministerial Acts With Due Care. ...........................................................................1

    II.    The Implied Duties May Be Modified, But Not Waived. .......................................3

    III.    Relevance of Implied Duties to CAFA's Securities Exception. ...........................4

        A.    A Claim Need Not Relate Exclusively to Securities-Based Rights, Duties, and Obligations. ..............................................................................4

        B.    The Implied Duties Here Are Ones "Relating to or Created by or Pursuant to" Securities. ...........................................................................5

            1.    The Securities Exception Is Not Limited to Contractual Duties. ............6

            2.    Any Implied Duties Here Are Created by the Securities Instruments. ......9

CONCLUSION ......................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AG Capital Funding Partners, L.P. v. State Street Bank &Trust Co.*,
  11 N.Y.3d 146 (2008) ..................................................................................................2

*Bankers Ins. Co., v. DLJ Mortg. Captial. Inc.*,
  No. 8:10-CV-0419-T-27EAJ, 2010 U.S. Dist. LEXIS 124147 (M.D. Fla. Oct. 8,
  2010) ............................................................................................................................2

*Beck v. Mfrs. Hanover Trust Co.*,
  218 A.D.2d 1, 12 (N.Y. App. Div. 1995) ....................................................................3

*Boles v. Lanham*,
  17 Misc. 3d 1106(A), No. 17059/06, 2007 WL 2850987 (N.Y. Sup. Ct. Sept. 25,
  2007), *aff'd*, 55 A.D. 3d 647 (2d Dep't 2008) .............................................................3

*Carmona v. Bryant*,
  No. CV-06-78-S-BLW, 2006 WL 1043987 (D. Idaho Apr. 19, 2006)...................7, 8

*ECA Acquisitions, Inc. v. Mat Three LLC*,
  No. 09 Civ. 590 (AKH), 2009 U.S. Dist. LEXIS 75501 (S.D.N.Y. May 1, 2009)....9

*Elliot Assocs. v. J. Henry Schroder Bank & Trust Co.*,
  838 F.2d 66 (2d Cir. 1988) ...........................................................................................2

*Estate of Pew v. Cardarelli*,
  527 F.3d 25 (2d Cir. 2008) ..............................................................................6, 7, 9

*Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*,
  603 F.3d 23 (2d Cir. 2010) ................................................................................5, 6–8

*In re Textainer P'ship Secs. Litig.*,
  C05-0969 MMC, 2005 WL 1791559 (N.D. Cal. July 27, 2005) ............................8, 9

*Ind. State Dist. Council of Laborers Pension Fund v. Renal Care Group, Inc.*,
  No. Civ. 3:05-0451, 2005 WL 2000658 (M.D. Tenn. Aug. 18, 2005) .......................9

*Logerfo v. Trustees of Columbia Univ.*,
  No. 6674/04, 2011 WL 2518557 (N.Y. Sup. Ct. June 1, 2011) ..................................9

*Meckel v. Cont'l Res. Co.*,
  758 F.2d 811 (2d Cir. 1985) .........................................................................................2

*N.Y. State Med. Care Facilities Fin. Agency v. Bank of Tokyo Trust Co.*,
  163 Misc. 2d 551 (Sup. Ct. 1994), *aff'd*, 216 A.D.2d 126 (N.Y. App. Div. 1995) ....3

*Puglisi v. Citigroup Alternative Invs. LLC*,
  08cv9774(NRB), 2009 WL 1515071 (S.D.N.Y. May 29, 2009) ................................9

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**CASES (CONT'D)**

*Rubin v. Mercer Ins. Group, Inc.*,
  Civil Action No. 10-6816 (MLC), 2011 WL 677466 (D.N.J. Feb. 15, 2011) ........................... 9

*Rusyniak v. Gensini*,
  629 F. Supp. 2d 203 (N.D.N.Y. 2009) .................................................................................... 3

*Sankel v. Spector*,
  8 Misc. 3d 670 (Sup. Ct. 2005), *aff'd* 33 A.D. 3d 167 (1st Dep't 2006) ............................... 10

*Williams v. Texas Comm. Trust Co.*
  No. 05-1070-CV-W-GAF, 2006 WL 1696681 (W.D. Mo. June 15, 2006) .............................. 9

**STATUTES**

15 U.S.C. § 77ooo(a)(1) ................................................................................................................ 2

28 U.S.C. § 1332(d)(9)(C) ........................................................................................................ 4, 5

**OTHER AUTHORITIES**

Jeffrey A. Schafer, 48 Cal. Jur. 3d *Partnership* § 228 (updated 2011) ........................................ 8

RESTATEMENT (SECOND) OF TORTS ............................................................................................. 9

RESTATEMENT (THIRD) OF TRUSTS ............................................................................................... 3

## INTRODUCTION

We respectfully submit this supplemental memorandum to address the Court's questions concerning whether the Trustee has non-contractual duties and the relevance of those questions to CAFA's securities exception. 9/21/11 Tr. at 67. The questions are:

- **"Does Bank of New York as trustee have any duties other than those spelled out in the PSAs?"** *Id.* Yes, in general a trustee has implied duties, although here, any duties that would otherwise be imposed by implication on BNYM are subsumed by express contractual duties.

- **"If so, what is the source of those obligations?"** *Id.* New York common law.

- **"Does New York law, that is, New York common law, impose nonwaivable duties on trustees like Bank of New York Mellon?"** *Id.* Yes, the same implied duties referenced above. Those duties can be modified, but not waived.

These implied duties do not place this action outside CAFA's securities exception. The Trustee's petition in this Article 77 proceeding is based on its rights and duties under the PSAs; moreover, under Walnut's own theory, the "persons" who brought this action are persons who owe their very existence to the PSAs. Without those securities instruments, there would be no Trusts, no Trustees, no trust assets, no claims against Countrywide, no Settlement, and no Article 77 proceeding. The ruling that the Trustee seeks in its petition is based solely on whether its determination to agree to the settlement was a proper and reasonable exercise of its power and authority provided for in the securities instruments: the PSAs. And as we explain below, the distinction between express and implied duties is not relevant to CAFA's securities exception.

## RESPONSE TO THE COURT'S QUESTIONS

**I.     The Trustee's Only Implied Duties Are to Avoid Conflicts and to Perform Ministerial Acts With Due Care.**

Of the 530 Trusts, 513—nearly all of them—are New York common-law trusts. For the seventeen others, BNYM serves as indenture trustee for securities issued by Delaware statutory

trusts. Those Indentures are governed by New York law. Indenture § 11.13. Both the Indentures and the PSAs expressly disavow implied duties. PSA § 8.01(i); Indenture § 6.01. For both types of trusts, the answer to the Court's questions is the same. Neither is subject to a general fiduciary duty, and only two duties are implied by law for either type of trust: (1) the duty to avoid conflicts, and (2) the duty to perform ministerial duties with due care.[1]

New York law imposes two extra-contractual duties on trustees. The first is the duty to avoid conflicts: "under state common law, the duties of an indenture trustee are strictly defined and limited to the terms of the indenture, although the trustee must nevertheless refrain from engaging in conflicts of interest." *Elliot Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (citations omitted).[2] Second, "an indenture trustee owes a duty to perform its *ministerial* functions with due care." *AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*, 11 N.Y.3d 146, 157–59 (2008) (emphasis added). The important distinction here is that, unlike with respect to the traditional duty of due care, this duty applies

---

[1] Some cases also suggest that after an event of default, "the indenture trustee's obligations come more closely to resemble those of an ordinary fiduciary." *Beck v. Mfrs. Hanover Trust Co.*, 218 A.D.2d 1, 12 (N.Y. App. Div. 1995). But those cases emphasize that "[t]he trustee must in the postdefault context act prudently, but only in the exercise of those rights and powers granted in the indenture." *Id.* at 13 (this "relatively minor change in the legal landscape, if change it is," leaves the "trustee's obligation . . . still circumscribed by the indenture."). Here, the Events of Default are strictly defined, and none has occurred. Further, *Beck*'s "prudent person" standard merely duplicates the contractual standard in Section 8.01 of the PSAs.

[2] Although the Trust Indenture Act ("TIA") applies to the Indentures for the Delaware trusts, it does not change the calculus. Section 315(a)(1) of the TIA provides that an indenture trustee "shall not be liable except for the performance of such duties [prior to an event of default] as are specifically set out in [the] indenture." 15 U.S.C. § 77ooo(a)(1). Applying the TIA, the Second Circuit has held that "so long as the trustee fulfills its obligations under the express terms of the indenture, it owes the debenture holders no additional, implicit pre-default duties or obligations *except to avoid conflicts of interest*." *Elliot Assocs.*, 838 F.2d at 71 (emphasis added); *see also id.* (explaining that the trustee was not required to act "over and above the duties and obligations it undertook in the indenture"); *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 816 (2d Cir. 1985) ("Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement.").

2

only to the trustee's "basic, non-discretionary, ministerial tasks." *Bankers Ins. Co. v. DLJ Mortg. Capital Inc.*, 2010 U.S. Dist. LEXIS 124147, at *17 (M.D. Fla. Oct. 8, 2010). By contrast, the terms of the trust agreement—not common law—govern the trustee's duty with regard to non-ministerial and discretionary functions. *See, e.g.*, *N.Y. State Med. Care Facilities Fin. Agency v. Bank of Tokyo Trust Co.*, 163 Misc. 2d 551, 557-59 (N.Y. Sup. Ct. 1994), (duties to monitor bonds, tender bonds following redemption call, and provide notice of redemption were "purely ministerial and administrative and thus involved the exercise of no discretion" and were subject to standard of due care), *aff'd*, 216 A.D.2d 126 (N.Y. App. Div. 1995).

## II.   The Implied Duties May Be Modified, But Not Waived.

Under the *Restatement of Trusts*, there are no duties that cannot be modified. *See* RESTATEMENT (THIRD) OF TRUSTS § 78(1) (trustee has duty to administer trust "[e]xcept as otherwise provided in the terms of the trust"); *id.* cmt. c(2) ("even the vital fiduciary duty of loyalty is a *default rule* that may be modified by the terms of the trust"). The *Restatement* further provides, however, that implied duties cannot be waived entirely. *See id.* § 78 cmt. c(2) ("to some extent the duty of loyalty involves (as do other duties) more than default law—that is, that there are limits to the settlor's freedom").[3]

---

[3]   Whatever non-waivable implied duties the Trustee may have, they are subsumed by express contractual duties. For example, the contracts themselves impose a duty to act in "good faith" (PSA §§ 8.01(iii), 8.02(ii)), a standard that encompasses the avoidance of conflicts. *See Boles v. Lanham*, 17 Misc. 3d 1106(A), No. 17059/06, 2007 WL 2850987, at *1 (N.Y. Sup. Ct. Sept. 25, 2007) ("A trustee must act in good faith in the administration of a trust . . . and avoid any circumstances whereby the trustee's personal interest will come in conflict with the interest of the beneficiaries."), *aff'd*, 55 A.D.3d 647 (N.Y. App. Div. 2008); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 224 (N.D.N.Y. 2009) (duty of "fidelity and good faith" encompassed "avoid[ing] self-dealing, as well as situations in which a fiduciary's personal interests conflicts with the interests of those owed a fiduciary duty"). In addition, the contracts provide that they shall not be construed to relieve the Trustee from liability for negligence" (PSA § 8.01), a statement that encompasses the duty of due care. In other words, any implied duties are subsumed by—and therefore would be duplicative of—the express duties contained in the contracts.

3

### III. Relevance of Implied Duties to CAFA's Securities Exception.

Even assuming *arguendo* that implied duties were somehow at issue in the Article 77 proceeding, that still would have no effect on the application of CAFA's securities exception here. A claim is not outside the scope of the securities exception merely because it touches, however tangentially, on rights, duties, and obligations that a securities instrument creates through implication rather than express statement. To the contrary, the exception on its face *includes* "fiduciary duties" that arise from securities.

The Trustee's Article 77 petition—for a determination that the Trustee acted within the bounds of reasonableness in entering into the Settlement—easily qualifies for the securities exception: it relates to rights and duties expressly stated in the securities instruments, and, to the extent it may be said to relate to implied duties, those have been created by or pursuant to those instruments. Indeed, the PSAs and indentures create not only the rights and duties at issue, they create the trusteeships that Walnut seeks to characterize as 530 plaintiffs needed to qualify for mass action treatment. Walnut thus cannot fairly deny that all the rights and duties even potentially at issue are rights and duties "relating to or created by or pursuant to any security"; hence, the CAFA securities exception applies directly to this proceeding.

#### A. A Claim Need Not Relate Exclusively to Securities-Based Rights, Duties, and Obligations.

The securities exception applies to

> any class action that solely involves a claim—
> * * *
> (C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security . . . .

28 U.S.C. § 1332(d)(9)(C). A request for a finding that the Trustee acted reasonably in settling claims against Countrywide undeniably fits this description. Its power to litigate and settle those claims comes directly from Sections 2.01(b) and 2.04 of the PSAs—if the PSAs did not require

4

Countrywide to repurchase non-conforming loans and grant the Trustee the right to enforce that obligation, those rights and duties would not be implied by law. Because the "claim . . . relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to a[] security," and the "action solely involves" that one request, the inquiry should end there.

Critically, the word "solely" does not modify "relates" (as in "a claim that relates [solely] to the rights . . . "). It modifies "involves." In assessing the securities exception's applicability, the question is whether a case "solely involves" a claim that falls within the exception, not whether each claim solely "relates to" rights, duties, and obligations described in the exception. As the Second Circuit explained in *Greenwich*, "the phrase 'solely involves' ensures that federal jurisdiction under CAFA cannot be defeated by ***adding a claim*** that falls within a § 1332(d)(9) exception to a class action complaint advancing one or more ***other claims***." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 32 (2d Cir. 2010) (emphasis added); *see also id.* at 31 ("If Congress had intended [the exceptions to CAFA] to apply only to class actions that involve no legal issues extraneous to the primary claim, they would have used language that was more clearly limiting."). In other words, the exception is applied on a claim-by-claim, not duty-by-duty, basis. If a claim "relate[s] to" qualifying rights, duties, or obligations, that is enough to qualify for the exception; it makes no difference if the claim also relates to rights, duties, or obligations which were not created by or exist pursuant to a security.

### B. The Implied Duties Here Are Ones "Relating to or Created by or Pursuant to" Securities.

The securities exception mandates remand here because the only arguably applicable implied duty—to avoid conflicts—is created by a security.

5

1. The Securities Exception Is Not Limited to Contractual Duties.

The exception applies to claims that relate to rights, duties, and obligations "relating to or created by or pursuant to" any security. It is not limited to rights, duties, and obligations created *in* a security. Unsurprisingly, then, no case holds that claims relating to duties that are implied from securities instruments are outside the exception.

The Second Circuit's decision in *Cardarelli* supports this point. *Cardarelli* concludes that the securities exception applies both "to suits that seek to enforce the terms of instruments that create and define securities, **and** to duties imposed on **persons who administer securities**," distinguishing those from claims under state anti-fraud statutes for the marketing of a security. *Estate of Pew v. Cardarelli*, 527 F.3d 25, 33 (2d Cir. 2008) (emphasis added). The latter category applies here: the Trustee, among other things, collects payments from Countrywide and distributes them in accordance with a prescribed priority, putting it squarely within the set of "persons who administer securities"—indeed, the entire purpose of the Article 77 proceeding is to facilitate the Trustee's ability to administer the securities. Moreover, *Cardarelli* says nothing to suggest that its reasoning is limited to expressly **contractual** duties; it seems unlikely that the Second Circuit, or for that matter, Congress, was unaware that trustees, bailees, agents, and similar "persons who administer securities" all have duties implied in law. The express reference to "fiduciary duties" in the statutory language demonstrates definitively that the exception is not limited to contractual duties.

As for *Greenwich*, its conclusion that the "focus of the inquiry is on the source of the right" (603 F.3d at 29) was in response to the argument that the exception does not apply unless "the certificate holders are . . . themselves parties to the PSAs" (*id.*)—the distinction that the *Greenwich* court drew had to do with where the right comes from, not who seeks to enforce it. And any "right that **arises from** an appropriate instrument" would qualify. *Id.* (emphasis added).

6

Like *Cardarelli*, *Greenwich* does not hold—or even suggest—that the applicability of the securities exception depends on whether the rights are expressly defined within the four corners of an instrument or are implied-in-law as a result of the same instrument.

The *Greenwich* court's use of the phrase "holders as holders" reinforces that conclusion. Any duty owed by the Trustee to the Certificateholders is a right owed to "holders as holders"—certainly not to "holders . . . as purchasers"—regardless of whether it is characterized as contractual. *Id.* The court in *Carmona v. Bryant* addressed precisely this issue. The defendant argued that "[s]ubsection (C) [*i.e.*, the securities exception] would cover [only] cases where the 'terms of a particular security . . . create . . . duties that are fiduciary in nature.'" No. CV-06-78-S-BLW, 2006 WL 1043987, at *2 (D. Idaho Apr. 19, 2006) (quoting defendant's brief). In support, the defendant "cite[d] cases where the fiduciary duties were created by the terms of the security." *Id.* But the court decisively rejected the notion that the securities exception is limited to duties created in the "terms of a particular security":

> [The defendant's] reading, while recognizing that subsection (C) applies to fiduciary duties "created by" securities, ignores the additional language that it applies also to fiduciary duties "relating to . . . or pursuant to any security." These additional terms broaden subsection (C)'s applicability beyond those cases where the duty is "created by" the security. Here, Carmona relies entirely on his ownership of Albertson's common stock to bring this action—he alleges no interest that would allow him to pursue this case other than his stock ownership. Thus, his claim "relates to" or is "pursuant to" a security as required by subsection (C).

*Id.* (citations omitted). Accordingly, the court held that claims for breach of fiduciary duty against corporate directors fell within the exception, even though fiduciary duties were not expressly stated in the terms of the security. *Id.*

The presence of extra-contractual defenses and collateral issues does not defeat the applicability of the securities exception. As the Second Circuit observed in *Greenwich*, "[a]lmost any securities claim under state law will necessarily 'involve' defenses—such as

7

statutes of limitations—and collateral issues—such as state contract law." 603 F.3d at 31. Indeed, in *Greenwich* itself, one of the defendants was not even a party to any securities instrument; instead, it was alleged to be liable only under state alter ego law. Nonetheless, that was held to be a collateral issue that did not take the claim out of the exception. To conclude otherwise would destroy the securities exception: Every contract is subject at least to the implied covenant of good faith and fair dealing—but for good reason, neither *Greenwich* nor any other case suggests that a claim under that covenant, let alone the mere presence of that implied duty, would somehow pull the case outside of the securities exception.

CAFA's explicit reference to "fiduciary duties" is also a strong clue to the meaning of "duties" and "created by." Even though the Trustee here is not a fiduciary, Congress's specification of "fiduciary duties" as an example forecloses interpreting the term "duties" to exclude implied duties. Neither the text nor the legislative history excludes duties merely because they are also implied by law (particularly where, as here, they are also set forth in the securities instruments). Nor is that how the exception has been interpreted—courts have consistently held that claims for implied-in-law fiduciary duties are within the exception. That was the case both in *Carmona*, discussed above, and *In re Textainer Partnership Securities Litigation*, in which the court considered claims for breach of fiduciary duty against general partners of various partnerships. No. C05-0969 MMC, 2005 WL 1791559, at *1 (N.D. Cal. July 27, 2005). The partnerships were organized under California law (*see* Fourth Am. and Consol. Class Action Compl. ¶ 11, *available at* 2006 WL 2702773), which imposes a non-waivable fiduciary duty on general partners. *See* Jeffrey A. Schafer, 48 Cal. Jur. 3d *Partnership* § 228 (updated 2011). The court held that the implied-in-law, non-waivable "fiduciary duty alleged to

8

have been breached . . . is one 'relating to or created by or pursuant to' a 'security.'" *Textainer*, 2005 WL 1791559, at *6.[4]

### 2. Any Implied Duties Here Are Created by the Securities Instruments.

Unlike the universally applicable duty not to commit fraud that was at issue in *Cardarelli*, any implied duties on securities trustees necessarily are "created by or pursuant to" (and also "relat[e] to") the securities. It is well established that a trustee relationship, for example, is consensual. *See Logerfo v. Trustees of Columbia Univ.*, No. 6674/04, 2011 WL 2518557, at *2 (N.Y. Sup. Ct. 2011) ("Mere reposal of one's trust or confidence in a party, however, does not automatically create a fiduciary relationship; the trust or confidence must be accepted as well."); *Sankel v. Spector*, 8 Misc. 3d 670, 678 (N.Y. Sup. Ct. 2005) ("one named as a trustee in a trust instrument who has not accepted the fiduciary office cannot be compelled to act as such") , *aff'd* 33 A.D. 3d 167 (N.Y. App. Div. 2006). Thus, even though fiduciary "liability is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary," such liability "***results from the relation***." RESTATEMENT (SECOND) OF TORTS § 874 cmt. b (emphasis

---

[4] *See also Ind. State Dist. Council of Laborers Pension Fund v. Renal Care Group, Inc.*, No. Civ. 3:05-0451, 2005 WL 2000658, at *1 (M.D. Tenn. Aug. 18, 2005) ("The causes of action alleged, based upon Delaware state law, are broadly breach of fiduciary duties and self-dealing"; "It seems clear to the court that any class action solely based upon breach of fiduciary duty in connection with a security is, indeed, a 'carve out' from the Class Action Fairness Act."); *Williams v. Texas Comm. Trust Co.* No. 05-1070-CV-W-GAF, 2006 WL 1696681, at *3–*5 (W.D. Mo. June 15, 2006) (claims for breach of fiduciary duty, constructive trust, and accounting against indenture trustee all within exception); *Rubin v. Mercer Ins. Group, Inc.*, Civil Action No. 10-6816 (MLC), 2011 WL 677466, at *4 (D.N.J. Feb. 15, 2011) ("The Complaint 'relates to' the rights, duties, and obligations created by virtue of Plaintiff's ownership of Mercer stock, in that both claims asserted pertain to the alleged breach of fiduciary duty").

*Compare ECA Acquisitions, Inc. v. Mat Three LLC*, No. 09 Civ. 590 (AKH), 2009 U.S. Dist. LEXIS 75501, at *5 (S.D.N.Y. May 1, 2009) ("by alleging that defendants falsely advertised the investment funds, the complaint goes beyond alleging mis-management of the funds, thereby ruling out the exception provided in section l332(d)(9)(C)"); *Puglisi v. Citigroup Alternative Invs. LLC*, 08-cv-9774(NRB), 2009 WL 1515071, at *1–*3 (S.D.N.Y. May 29, 2009) (same).

added). Hence, any duties imposed by law upon the Trustee are being imposed on a contractual relationship, meaning that the duties are "created by or pursuant to" the securities contracts.

Further, as noted at the outset, if there are "100 or more persons" in this action, as Walnut posits, these "persons" are the various "capacities" of The Bank of New York Mellon. These "persons" would not even exist without the PSAs, let alone have duties, implied or otherwise. In fact, none of the parties—BNYM, the Certificateholders, or Countrywide—would have any relationship if not for the PSAs. The notion that those parties have "rights, duties (including fiduciary duties), or obligations" to each other that are not "relat[ed] to or created by or pursuant to" those contracts is untenable.

## **CONCLUSION**

For all of the foregoing reasons, the Court should grant the Motion and remand the proceeding to state court.

Dated:   New York, New York
         September 27, 2011

|  |  |
|---|---|
|  | s/Matthew D. Ingber |
| DECHERT LLP | MAYER BROWN LLP |
| Hector Gonzalez | Jason H.P. Kravitt |
| James M. McGuire | Matthew D. Ingber |
| 1095 Avenue of the Americas | 1675 Broadway |
| New York, New York 10036 | New York, New York 10019 |
| (212) 698-3500 | (212) 506-2500 |

*Attorneys for Petitioner
The Bank of New York Mellon*

10