UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In the matter of the application of

THE BANK OF NEW YORK MELLON (as Trustee under various Pooling and Servicing Agreement and Indenture Trustee under various Indentures) *et al.*,

    Petitioners,

-against-

WALNUT PLACE LLC *et al.*,

    Intervenor-Respondents.

2011-cv-5988 (WHP)

---

### THE INSTITUTIONAL INVESTORS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO REMAND

The Institutional Investors, intervenor-petitioners, and co-movants with the Bank of New York Mellon ("BNYM") in the motion to remand (Doc. # 55),[1] file this supplemental brief as requested by the Court at its September 21, 2011 hearing. This brief is intended to supplement, rather than repeat, the arguments and authorities set forth in BNYM's supplemental brief.

### I. INTRODUCTION

As discussed below, New York common law imposes duties on indenture trustees, like BNYM, beyond those contained in the express terms of the indenture or PSA. However, the existence of these duties does not take the Article 77 proceeding outside the scope of the CAFA "securities exception," because these duties are not placed at issue by BNYM's Article 77

---

[1] *See* Memorandum of Law of The Institutional Investors in Support of and Joining the Bank of New York Mellon's Motion to Remand (Doc. # 78).

petition. In addition, even if BNYM's petition did place these common law duties at issue, the result would be the same because: (i) these duties are "collateral issues" in this proceeding and are therefore irrelevant to the jurisdictional analysis under CAFA; and (ii) these duties fall within the scope of the CAFA securities exception.[2]

## II.
## ARGUMENT AND AUTHORITIES

### A.
### New York Common Law Imposes Duties on Indenture Trustees Such as BNYM

BNYM acts as trustee for the trusts at issue here pursuant to certain pooling and servicing agreements ("PSAs") and trust indentures. As such, BNYM is an indenture trustee.[3]

Although the general rule is that "the duties of an indenture trustee are strictly defined and limited to the terms of the indenture," New York common law imposes two additional obligations on indenture trustees: (i) the duty to avoid conflicts, *id.*, and (ii) the duty to perform non-discretionary, ministerial functions with due care. *Elliot Assoc. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988); *AG Capital Funding Partn., L.P. v. State Street Bank and Trust Co.*, 11 N.Y.3d 146, 157 (2008). In addition, post-default, New York law

---

[2] The Institutional Investors continue to contend that there is no reason for the Court to consider the applicability of the CAFA securities exception; because Walnut has failed to demonstrate that this proceeding is a "mass action" removable under CAFA since (among other reasons) this equitable proceeding includes no "monetary relief claims." 28 U.S.C. § 1332(d)(11)(B)(i).

[3] As it relates to the duties of a trustee, a PSA is the functional equivalent of a trust indenture, meaning the law applicable to indenture trustees is applicable to BNYM. *See, e.g., E.F. Hutton S.W. Prop. II, Ltd v. Union Planters Nat'l Bank*, 953 F.2d 963, 967-69 (5th Cir. 1992) ("Just as a trust may be created without the term 'trust' being used, an indenture trust may be created without a bright sign declaring it 'Indenture Trust.' It is the substance of the Trust Agreement that determines the character of the trust and the duties of the trustee."); *Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc.*, 2010 WL 3324705, at *5-7 (N.D. Ill. 2010) (analyzing duties of trustee under PSA by reference to law governing indenture trustees); *Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.*, 2010 WL 4867533, at *6 (M.D. Fla. 2010) (same). *See also Greenwich Fin. Servs. Distressed Mortgage Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 29 (2d Cir. 2010). (explaining that PSAs are "trust agreements similar to bond indentures in many respects").

2

imposes a fiduciary duty on an indenture trustee to exercise the rights granted to it under the indenture in a prudent manner to insure repayment of the obligations secured by the trust.[4] *Beck v. Manufacturers Hanover Trust Co.*, 218 A.D.2d 1, 632 N.Y.S.2d 520, 527-28 (1st Dep't 1995). As explained below, the existence of these common law duties does not take this Article 77 proceeding outside the scope of the CAFA securities exception.

### B. The Existence of Common Law Duties Does Not Exclude This Article 77 Proceeding from the Scope of the CAFA Securities Exception

The fact that New York common law imposes a pre-default common law duty to avoid conflicts, a pre-default duty to exercise due care in performing ministerial tasks, and a post-default fiduciary obligation to prudently exercise trust rights does not take this proceeding outside the scope of the CAFA securities exception. This is so because, as discussed in detail below, BNYM's Article 77 petition does not place these common law duties at issue. In addition, even if BNYM's petition did place these common law duties at issue, the result would be the same because: (i) these duties are "collateral issues" in this proceeding and are therefore irrelevant to the jurisdictional analysis under CAFA; and (ii) these duties fall within the meaning of "rights, duties (including fiduciary duties), and obligation relating to or created by or pursuant to any security," 28 U.S.C. § 1332(d)(9)(C), and are therefore within the scope of the securities exception.

### 1. BNYM's Common Law Duties Are Not Placed at Issue by Its Article 77 Petition

Under the well-pleaded complaint rule, questions of federal jurisdiction and removal are decided based on the face of the plaintiff's pleading and are unaffected by defensive matters

---

[4] Post-default duties are triggered upon the occurrence of an "event of default" as defined by relevant indenture or PSA. *Beck*, 632 N.Y.S.2d at 527.

3

raised by defendants. *Vaden v. Discover Bank*, 556 U.S. 49, 129 S.Ct. 1262, 1272 (2009). As explained below, BNYM's petition does not place at issue any of the common law duties imposed on indenture trustees by New York common law. Therefore, the existence of such duties has no effect on the applicability of the CAFA securities exception to this proceeding.

The pre-default common law duty of care imposed by New York law applies only to "basic non-discretionary, ministerial functions." *AG Cap. Funding*, 11 N.Y.3d at 157. This duty is not implicated by BNYM's Article 77 petition. BNYM's decision to enter into the Settlement Agreement is not a "basic non-discretionary, ministerial function." *Id.* To the contrary, a trustee's decision whether to pursue and/or settle litigation claims owned by a trust is an entirely discretionary matter implicating complex decision making and judgment. Thus, the BNYM's Article 77 petition does not place at issue its common law duty to perform non-discretionary, ministerial functions with due care.

The pre-default common law duty to avoid conflicts is also not raised on the face of BNYM's Article 77 petition. It is true that New York law allows a trustee to make use of Article 77 to seek advance approval of a trust transaction where the trustee is operating under a conflict of interest. *See In the Matter of Scarborough Prop. Corp.*, 25 N.Y.2d 553, 559 (1969) (approving trustee purchase of trust property under Article 77 notwithstanding trustee conflict because "a court of equity is a court having general supervision over the administration of trusts, and if the parties are properly represented before it, it has authority to authorize what would otherwise not be permissible."). However, that is not what is occurring here. Unlike the trustee in *Scarborough*, who sought approval of a conflicted transaction that "would otherwise not be permissible," *id.* at 559, BNYM does not allege in its petition that it is operating under a conflict of interest, nor does it seek relief on that basis. *See* BNYM Petition (State Court Doc. #1) (no

4

allegation of conflict of interest or request to approve conflicted transaction). Rather, BNYM's Article 77 petition seeks only a declaration that its exercise of its discretionary right to compromise and settle trust claims does not breach a duty owed to certificateholders. *See, e.g., In re Application of IBJ Schroeder Bank & Trust Co.*, 101530/1998 (N.Y. Sup. Ct. N.Y. Cnty. Aug. 16, 2000) (approving un-conflicted indenture trustee's exercise of discretion in settling trust claims). Thus, BNYM's Article 77 petition does not place at issue its common law duty to avoid conflicts.

Nor does BNYM's Article 77 petition put at issue an indenture trustee's post-default fiduciary duty to prudently exercise trust rights imposed by New York common law. Nowhere in the petition does BNYM allege that a default has occurred with respect to any of the Covered Trusts. *See* BNYM Petition (State Court Doc. #1) (no allegation of default).

This analysis is not changed by the fact that Walnut and other respondents may oppose the relief sought by BNYM by asserting that BNYM was operating under a conflict in connection with the Settlement, or that a default had occurred thereby triggering fiduciary duties for BNYM. Defensive matters not raised on the face of the plaintiff's pleading are irrelevant to the jurisdictional analysis. *Vaden*, 129 S.Ct. at 1272. *See also Greenwich Fin. Servs. Distressed Mortgage Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 31 (2d Cir. 2010) (applicability of CAFA securities exception unaffected by existence of defensive matters raising issues not arising out of securities instruments).

Accordingly, because BNYM's petition does not implicate any of the pre- or post-default common law duties imposed on indenture trustees by New York common law, these duties are irrelevant to the Court's jurisdictional analysis and cannot form the basis of a finding that this Article 77 proceeding is outside the scope of the CAFA securities exception.

## 2.
## BNYM's Common Law Duties Are, at Most, "Collateral Issues" That Do Not Take This Proceeding Outside the CAFA Securities Exception

The Second Circuit has held that the CAFA securities exception applies to claims that arise out of securities instrument, such as a PSA, even if the claims also raise "collateral issues" that arise out of statutory or common law. *Greenwich Fin. Servs. Distressed Mortgage Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 29 (2d Cir. 2010). Here, even if BNYM's petition does place at issue its common law duties as indenture trustee, these would be, at most, "collateral issues" that would not take this proceeding outside the scope of the CAFA securities exception.

In *Greenwich*, the plaintiffs sought to pursue mortgage repurchase claims against Countrywide Servicing and its parent corporation Countrywide Financial. *Id.* at 24-25, 31. Because Countrywide Financial was not a party to the PSAs, on which the repurchase claims were based, the plaintiffs relied on "state alter ego law" as the basis for imposing liability on the parent corporation. *Id.* at 31. When the defendants argued that the existence of this common law theory of liability meant that the case was not one that "solely involves" claims arising under a securities instrument, the *Greenwich* court rejected this argument holding that "the phrase "solely involves ..." cannot be stretched so far as to limit the exception in §§ 1339(d)(9) and 1453(d) to class actions that raise no collateral issues ...." *Id.* The *Greenwich* court explained that Congress could not have intended that the CAFA securities exception exclude claims raising such "collateral issues" because "almost any securities claim under state law will necessarily 'involve' ... collateral issues – such as state contract law." *Id.* In short, the *Greenwich* court concluded that the CAFA securities exception is unaffected by the existence of "legal issues extraneous to the primary claim" that do not arise out of securities instruments. *Id.*

6

In *Greenwich*, the "state contract law" and "state alter ego law" that were implicated by the plaintiffs' claims were viewed as "collateral issues," for purposes of the CAFA securities exception, because they merely supplied rules for interpreting and enforcing pre-existing claims that arose out of securities instruments. *Id.* The same holds true with respect to the common law duties imposed on indenture trustees. Rather than impose new obligations on indenture trustees beyond those contained in their indentures, these common law duties simply provide a standard for interpreting and enforcing an indenture trustee's preexisting obligations *created by its indenture*. Indeed, the duty to avoid conflicts simply provides a standard for measuring an indenture trustee's conduct when it is carrying out preexisting duties and obligations that are *created by the indenture*. See Part II(A), *supra*. Likewise, the duty to exercise reasonable care applies only to those situations in which an indenture trustee is carrying out its obligation to perform preexisting non-discretionary ministerial tasks that are *created by the indenture*. *Id.* Finally, the fiduciary duty to act prudently following a default applies only to an indenture trustee's exercise of its preexisting rights and powers *created by the indenture*. *Id.*

Here, the "primary claim" that BNYM seeks to prosecute is an action to obtain a declaration that its decision to enter into the Settlement was consistent with its duties and obligations to certificateholders under the PSAs and indentures. Like the "state contract law" and "state alter ego law" issues that were viewed by the *Greenwich* court as not affecting the CAFA securities exception analysis, the common law duties imposed on indenture trustees such as BNYM are, at most, "collateral issues" that are "extraneous to the primary claim" asserted here by BNYM, and therefore do not exclude this proceeding from the scope of the CAFA securities exception. *Greenwich*, 603 F.3d 31.

7

### 3.
### BNYM's Common Law Duties
### Are Within the Scope of the CAFA Securities Exception

Even if BNYM's article 77 petition does place at issue the common law duties imposed on indenture trustees, and even if these duties are not "collateral issues" that are irrelevant to the CAFA securities exception analysis, the exception would still apply to this proceeding. BNYM has addressed this issue, at length, in its supplemental brief. The Institutional Investors adopt those arguments and will not repeat them here. Instead, the Institutional Investors offer the additional arguments below regarding the plain meaning of the CAFA securities exception and the illogic of excluding the common law duties imposed on indenture trustees from its reach.

A plain reading of the language of the CAFA securities exception makes clear that the common law duties of indenture trustees are included within its scope. The pre-default duty to avoid conflicts, the pre-default duty to exercise due care in the performance of ministerial tasks, and the post-default fiduciary duty to prudently exercise trust rights are each "rights, duties (including fiduciary duties), and obligations" and all of them plainly "relat[e] to" and are "created by or pursuant to" a security. 28 U.S.C. § 1332(d)(9)(C). Indeed, each of these duties is imposed on BNYM <u>solely</u> because it agreed to act as indenture trustee for securitization transactions pursuant to the PSAs and indentures, which are themselves "instruments that create and define securities." *Greenwich*, 603 F.3d at 29.

This conclusion is supported by the Second Circuit's statement in *Greenwich* that claims based "on the duties imposed on persons who administer securities" are included within the scope of the CAFA securities exception. *Id.* at 28. An indenture trustee is plainly one of the "persons who administer securities" in a securitization transaction. *See, e.g.,* Talcott J. Franklin and Thomas F. Nealon, III, Mortgage and Asset Backed Securities Handbook § 1.10 (2011)

(duties of indenture trustee include "overseeing the distribution of cash in accordance with the trust requirements, as well as high level oversight of the management of the trust to ensure conformance with the pooling and servicing agreement or trust indenture, the document which governs the management of the trust.").

Moreover, there is simply no logic in an interpretation of the CAFA securities exception that <u>includes</u> claims based on duties and obligations arising under the express terms of an indenture (as *Greenwich* plainly holds) but <u>excludes</u> claims based on common law duties that do nothing more than set standards for an indenture trustee's exercise of the <u>same</u> preexisting duties and obligations arising under the express terms of the <u>same</u> indenture. Such a rule would lead to nonsensical results. For example, if this were the law, a breach of contract suit by trust beneficiaries against an indenture trustee for a failure to make certain payments required by the indenture would be immune from removal under CAFA because the source of the right at issue is the express terms of an indenture. Whereas, the same suit, complaining of the same breach, but stated instead as a breach of the implied duty of reasonable care imposed on indenture trustees when performing non-discretionary ministerial tasks, would be removable under CAFA because it is premised on a common law duty imposed by state law.

The Institutional Investors submit that this is not the law. Rather, they submit that the CAFA securities exception includes, as its terms make clear, all rights, duties, and obligations arising under securities instruments, such as PSAs and indentures, regardless of whether those duties are premised on the express terms of the instrument, or on a common law duty that provides a standard for judging the performance of the obligations imposed by the instrument.

## III.
## CONCLUSION

For all the foregoing reasons, as well as those set forth in the Institutional Investors' and BNYM's prior remand briefing, the Institutional Investors respectfully request that the Court remand this proceeding to state court, pursuant to 28 U.S.C. § 1447, without delay.

Dated: New York, New York
September 27, 2011

WARNER PARTNERS, P.C.

By: _____
Kenneth E. Warner (KW-5524)

950 Third Avenue, 32nd Floor
New York, New York 10022
Phone: (212) 593-8000

*Attorneys for Intervenor-Petitioners*

OF COUNSEL:

GIBBS & BRUNS LLP by

Kathy D. Patrick (*pro hac vice* pending)
Robert J. Madden (*pro hac vice*)
Scott Humphries (*pro hac vice* pending)
Kate Kaufmann Shih

1100 Louisiana, Suite 5300
Houston, Texas 77002
Phone: (713) 650-8805