UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the matter of the application of<br><br>THE BANK OF NEW YORK MELLON (as Trustee under various Pooling and Servicing Agreements and Indenture Trustee under various Indentures) *et al.*,<br><br>                                  Petitioners,<br><br>-against-<br><br>WALNUT PLACE LLC *et al.*,<br><br>                               Intervenor-Respondents. | Case No. 1:11-cv-05988-WHP<br><br>Hon. William H. Pauley<br><br>**MEMORANDUM OF LAW OF THE RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO** |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................3

    I.     THE ALLOCATION OF RIGHTS AND DUTIES UNDER THE TRUST INDENTURE ACT................................................................................................3

    II.    IN PRESENTING THE SETTLEMENT FOR APPROVAL AND SEEKING TO RELEASE CERTIFICATEHOLDERS' RIGHTS, BONY HAS DUTIES INDEPENDENTLY ARISING UNDER NEW YORK COMMON LAW. ...................................................................................................8

CONCLUSION....................................................................................................................10

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*,
   11 N.Y. 3d 146, 866 N.Y.S.2d 578 (2008) ..................................................................4, 5

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgt. Inc.*,
   80 A.D.3d 293, 915 N.Y.S.2d 7 (N.Y. 2010) ....................................................................9

*Beck v. Manufacturers Hanover Trust Co.*,
   218 A.D. 2d 1, 632 N.Y.S.2d 520 (N.Y.A.D. 1995)......................................................6, 7

*Bluebird Partners, L.P. v. First Fidelity Bank, N.A. New Jersey*,
   85 F.3d 970 (2d Cir. 1996)..................................................................................................3

*Bullmore v. Banc of America Secs. LLC*,
   485 F. Supp. 2d 464 (S.D.N.Y. 2007)..............................................................................3, 8

*Bullmore v. Ernst & Young Cayman Is.*,
   45 A.D.3d 461, 846 N.Y.S.2d 145 (N.Y. 2007) ................................................................9

*Capital, S.A. v. Lexington Capital Funding III, Ltd.*,
   No. 10 Civ. 25 (PGG), 2011 WL 3251554 (S.D.N.Y. July 28, 2011).............................10

*Fantozzi v. Axsys Techs., Inc.*,
   No. 07 Civ. 2667 (LMM), 2007 WL 2454109 (S.D.N.Y. Aug. 20, 2007) ......................10

*In re Bankers Trust Co.*,
   450 F.3d 121 (2d Cir. 2006)...........................................................................................2, 6

*LNC Investments, Inc. v. First Fidelity Bank, N.A.*,
   935 F. Supp. 1333 (S.D.N.Y. 1996) (Mukasey, J.)....................................................2, 4, 7

*Magten Asset Mgt. Corp. v. Bank of N.Y.*,
   15 Misc. 3d 1132(A), 841 N.Y.S.2d 219 (N.Y. Sup. 2007) .............................................7

*Semi-Tech Litig., LLC v. Bankers Trust Co.*,
   353 F. Supp. 2d 460 (S.D.N.Y. 2005)....................................................................2, 4, 5, 6

*Sommer v. Federal Signal Corp.*,
   79 N.Y.2d 540 (1992) ................................................................................................2, 3, 9

*United States Trust Co. v. First Nat'l City Bank*,
   57 A.D. 2d 285, *aff'd*, 45 N.Y.2d 869, 410 N.Y.S.2d 580, 382 N.E. 2d 1355 (1980) ..............4

*Wells Fargo Bk. N.W., N.A. v. Sundowner Alexandria, LLC*,
   No. 09 Cv. 7313, 2010 WL 3238948 (S.D.N.Y. Aug. 16, 2010) .....................................10

**STATUTES, RULES AND CODES**

15 U.S.C. §§77aaa *et seq.* (the "TIA") .................................................................................. passim

15 U.S.C. §77ooo(a)(1), and decisions ........................................................................................4, 5

15 U.S.C. §77zzz ...........................................................................................................................4

**OTHER AUTHORITIES**

3A Arthur L. Corbin, CORBIN ON CONTRACTS §767 (1960) ............................................................6

Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago, the Westmoreland County Employee Retirement System, the City of Grand Rapids General Retirement System and the City of Grand Rapids Police and Fire Retirement System (collectively "Chicago Police"), intervenors in this action, and the Plaintiffs in the related action against The Bank of New York Mellon (the "Related Action"), respectfully submit the following memorandum of law in response to the questions posed by the Court at the September 21, 2011 hearing on the motion to remand (the "Hearing").

## INTRODUCTION

At the Hearing, Tr. at 67, this Court asked for briefing on the following two issues:

(1)     Does the Bank of New York as trustee have duties other than those spelled out in the PSA, and if so, what is the source of the obligations?

(2)     Does New York common law impose nonwaivable duties on trustees like Bank of New York Mellon?

The Bank of New York Mellon ("BONY") does have duties, apart from those identified in the pooling and servicing agreement ("PSA"), under both the federal Trust Indenture Act, 15 U.S.C. §§77aaa *et seq.* (the "TIA") and the common law of New York.  Chicago Police has, in fact, sued BONY for several violations of these duties in the Related Action.[1]

The TIA was passed by Congress to protect bondholders and to reduce widespread abuses by the parties drafting trust indentures that broadly immunized indenture trustees from

---

[1]     By Chicago Police's Verified Class Action and Derivative Complaint (the "Complaint" or "Cmplt"), in addition to the TIA and breach of contract claims, Chicago Police pled claims against BONY under New York's common law for breach of the covenant of good faith and fair dealing, negligent misrepresentation, negligence and breach of fiduciary duty.  Among other things, the Complaint in the Related Action alleges claims for the Trustee's failure to act timely to preserve trust assets after learning of fundamental contract defaults, including the failure to perfect title to the mortgage loans and gross violations of the issuer's representations and warranties with respect to the underwriting of the mortgage loans (Cmplt ¶¶70, 76).

their obligations under common law to the trusts' beneficiaries. The TIA, as passed in 1939, and as strengthened by its amendment in 1990, restricts the ability of the Trustee to contract away its duty of due care, and under certain circumstances, its fiduciary responsibilities. While the TIA establishes uniform minimum rights of bondholders, it does not pre-empt State common law unless it is inconsistent with the TIA. *See LNC Investments, Inc. v. First Fidelity Bank, N.A.*, 935 F. Supp. 1333, 1346 (S.D.N.Y. 1996) (Mukasey, J.).

As Judge Kaplan explained in his comprehensive analysis in *Semi-Tech Litig., LLC v. Bankers Trust Co.*, 353 F. Supp. 2d 460 (S.D.N.Y. 2005), under the TIA and New York law, there are "two tiers" of duties for indenture trustees: "prior to default," the duties of an indenture trust are generally limited to those outlined in the indenture (here the PSA); **after** a default, however, the Indenture Trustee is held to a "prudent person" standard. *Id.* at 471-72. In addition, "prior to default, a trustee may be liable 'for failure to perform basic non-discretionary ministerial tasks' not specified in the indenture." *Id.* at 472. Judge Kaplan's analysis was approved and adopted as the law of the Second Circuit with one critical exception. On appeal, the Second Circuit held, contrary to Judge Kaplan's reasoning, that an indenture trustee could not avoid its broader "post-default" common law duties by negligently failing to satisfy pre-conditions to the determination of a default in the trust indenture. *In re Bankers Trust Co.*, 450 F.3d 121, 127-28 (2d Cir. 2006).

In seeking to obtain approval of a settlement of the Trusts' claims against Bank of America ("BOFA"), Countrywide and its affiliates, BONY is exercising its "post-default" powers and responsibilities to certificate-holders, and the duties incident to its performance arise under and are governed by New York common law principles. New York law permits claims sounding in tort to be pled along with contract claims, where there is an independent basis in law for the tort claims. As the New York Court of Appeals explained in *Sommer v. Federal Signal*

2

*Corp.*, 79 N.Y.2d 540 (1992), there is a "borderland" in which both sets of claims may co-exist, and that independent tort claims "most often arise where the parties' relationship initially is formed by contract, but there is a claim that the contract was performed negligently." *Id.* at 551. *See also Bullmore v. Banc of America Secs. LLC*, 485 F. Supp. 2d 464, 469-70 (S.D.N.Y. 2007) ("Conduct constituting a breach of contract nevertheless is actionable in tort if 'a legal duty independent of the contract itself has been violated.'") (citation omitted).

Thus, as more fully described below, under the scheme provided in the TIA and under New York common law, the "source" of BONY's obligations with respect to the settlement depends upon whether BONY is acting "pre-default" or "post-default," and the nature of the relief BONY is requesting in the Article 77 proceeding. Because the powers BONY is exercising by proceeding to settle actions on behalf of certificate-holders are those which it has as a result of "defaults" under the PSA, BONY has fiduciary duties to act as a prudent person and in the best interests of certificate-holders in preserving the Trusts' corpus, and its conduct is governed by New York common law.

## **ARGUMENT**

I.  **THE ALLOCATION OF RIGHTS AND DUTIES UNDER THE TRUST INDENTURE ACT**

As the Second Circuit explained in *Bluebird Partners, L.P. v. First Fidelity Bank, N.A. New Jersey*, 85 F.3d 970 (2d Cir. 1996):

> The Trust Indenture Act was enacted because previous abuses by indenture trustees had adversely affected "the national public interest and the interest of investors in notes, bonds [and] debentures," 15 U.S.C. §77bbb(a) and Congress sought to address this national problem in a uniform way, S.Rep. No. 248, 76th Cong., 1st Sess. 3 (1939).

*Id.* at 974.

Following this decision, and in a related proceeding, Judge Mukasey explained that, while the TIA applied to ensure that investors nationwide received the same minimum protections, the TIA, by 15 U.S.C. §77zzz, "recognizes, and courts have held, that states may regulate trust indentures so long as such regulation does not conflict with the TIA." *LNC Investments*, 935 F. Supp. at 1344. In making this statement, Judge Mukasey cited to the example in *United States Trust Co. v. First Nat'l City Bank*, 57 A.D. 2d 285, 295-97, *aff'd*, 45 N.Y.2d 869, 410 N.Y.S.2d 580, 382 N.E. 2d 1355 (1980), which held that the TIA does not abrogate an indenture trustee's common law, pre-default, fiduciary duty of loyalty. Similarly, the New York Court of Appeals held in *AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 11 N.Y. 3d 146, 866 N.Y.S.2d 578 (2008), that consistent with the TIA, 15 U.S.C. §77ooo(a)(1), and decisions interpreting the pre-default obligations of an indenture trustee, "an indenture trustee owes a duty to perform its ministerial functions with due care, and if this duty is breached the trustee will be subjected to tort liability." *AG Capital*, 11 N.Y. 3d at 147.

Apart from the duty of loyalty and the duty to perform ministerial requirements with due care, the TIA and New York law generally permit indenture trustees to limit their responsibilities to those included in the indenture, or contract. That is not true, however, once there has been a material default in the performance of the contract obligations.

The two-tier "pre-default" and "post-default" structure of the indenture trustee's duties under the TIA, and at common law, is fully described in *Semi-Tech Litigation, LLC v. Bankers Trust Co.*, 353 F. Supp. 2d at 471-82. As Judge Kaplan explained, in the context of a case in which the TIA was explicitly incorporated by reference into the indenture trust (so that the Trustee's obligations under the TIA and its common law obligations were virtually identical), the Trustee's "pre-default" duties were generally limited to those imposed by the indenture. *Id.* at 472. In addition, "prior to default, a trustee may be liable 'for failure to perform basic non-

4

discretionary ministerial tasks' not specified in the indenture," and it was "at least arguable that the trustee's basic ministerial functions include ensuring that the trustee has received each document required under the statute and the indenture." *Id.* at 472, n. 64. Among other things, under Section 315(a) of the TIA, 15 U.S.C. §77ooo(a), and the indenture in that case, pre-default, the Trustee had the duty to examine the evidence of performance of the obligations of other parties furnished to the Trustee, *id.* at 472-75, and, under section 315(b), to give "notice of all defaults known to the trustee" to the beneficiaries under the indenture. *Id.* at 479. Moreover, under the TIA, a trust indenture may not relieve the trustee of liability for its own negligent actions. *See AG Capital*, 11 N.Y. 3d at 155, n. 5 (quoting §315(d) of the TIA, 15 U.S.C. §77ooo(d)).

The PSA in this case provides that "[w]ithin 60 days of any Event of Default, the Trustee shall transmit by mail to the Certificateholders notice of each such Event of Default hereunder known to the Trustee, unless such Event of Default shall have been cured or waived."[2] The PSA also provides that BONY and the other parties to the PSA, "[u]pon discovery . . . of a breach of a representation or warranty with respect to a Mortgage Loan made pursuant to Section 2.03(a) that materially and adversely affects the interests of the Certificateholders in that Mortgage Loan . . . shall give prompt notice thereof to the other parties," and that each seller must thereafter cure the breach or substitute or repurchase the defective loan. *See* the PSA at ¶2.03(c). As described by counsel from Gibbs & Bruns LLP, certain institutional investors banded together to force the

---

[2] *See* the PSA attached as Exhibit A to the Declaration of Max R. Schwartz (the "Schwartz Decl.") at §7.03(b).

Trustee to act on these defaults, because the Trustee was doing nothing to enforce the Trusts' repurchase rights. (Tr. at 62).[3]

Where there has been a default under the Trust Indenture -- or where there would have been an "event of default" but for the Trustee's negligence in satisfying the pre-condition of providing notice for the default -- the "post-default" obligations of the Trustee spring into effect. This was explained by the Second Circuit on appeal of Judge Kaplan's decision in *Bankers Trust*:

> Because BT [the Indenture Trustee] had a duty under §315(a) to examine the certificates, its failure to do so cannot excuse its failure to comply with the duty under §315(b) to take action with respect to known defaults. As Judge Friendly explained in *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir. 1966) (in banc), "'One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape liability for not rendering his promised performance by preventing the happening of the condition on which it was promised.'" (quoting 3A Arthur L. Corbin, CORBIN ON CONTRACTS §767, at 540 (1960)).

*In re Bankers Trust Co.*, 450 F.3d at 127.

Once in the "post-default" tier of responsibilities, regardless of what the Indenture may say, the Indenture Trustee has all the common law fiduciary responsibilities of an ordinary trustee -- *i.e.*, it has the "obligation," as well as the "right," to exercise all powers provided to it under the Trust Indenture, and at common law, to protect the Trust corpus on behalf of the certificateholders.

Thus, the First Department of the New York Appellate Division, in *Beck v. Manufacturers Hanover Trust Co.*, 218 A.D. 2d 1, 632 N.Y.S.2d 520 (N.Y.A.D. 1995) rejected the Trustee's argument that the indenture agreement strictly defined and limited its

---

[3] Gibbs & Bruns also described certain of the "events of default" under the PSA in its October 18, 2010 letter to the Trustee and other parties to the PSA, Exhibit B to the Schwartz Decl.

6

responsibilities to certificateholders.  In *Beck*, the Court first rejected the Trustee's argument that it could self-deal ***at any time***, regardless of what the Indenture permitted; the Court then went on to explain that, post-default the Trustee's responsibilities to act prudently resembled those of an ordinary trustee, because, at that point, as a practical matter, the Trustee's diligence was needed to protect bondholders' rights to recover what they were owed:

> ***[T]he present defendant owed the trust beneficiaries, including plaintiffs, the fiduciary obligation of undivided loyalty. But it was not loyalty alone among the constellation of fiduciary attributes that was required of the present Trustee***, for even if the responsibilities of an indenture trustee may be significantly more narrowly defined than those of an ordinary trustee while the obligation that it is the indenture's purpose to secure remains current, ***subsequent to the obligor's default, as herein, it is clear that the indenture trustee's obligations come more closely to resemble those of an ordinary fiduciary, regardless of any limitations or exculpatory provisions contained in the indenture.*** The reality militating in favor of this revised allocation of responsibility, of course, is that in the aftermath of a default by the obligor, bondholders, particularly those whose bonds represent only a relatively small portion of a large issue, will, as a practical matter, be unable to act effectively to guard against the further impairment of their economic interests, and although those interests may be relatively small when compared to the entire issue, they may nevertheless be, and often are, extremely substantial in the context of the individual bondholder's assets. ***Subsequent to default, it is usually only the trustee who is able to act swiftly and effectively to assure, insofar as assurance can be had, that the rights of bondholders to recover what they are owed will ultimately be vindicated.***

*Id.*, 218 A.D.2d at 12, 632 N.Y.S. 2d at 527.

And, as Judge Mukasey explained in *LNC Investments, Inc.*, 935 F. Supp at 1347-48, the obligations of the Trustee articulated in *Beck* include "extra-contractual" fiduciary duties as imposed by operation of New York common law.  *See also Magten Asset Mgt. Corp. v. Bank of N.Y.*, 15 Misc. 3d 1132(A), at *7, 841 N.Y.S.2d 219 (N.Y. Sup. 2007) ("After a default, the trustee is under an enforceable obligation to act prudently to preserve the trust assets for the benefit of the investors") (citing *Beck*, and *LNC Investments, Inc.*).

7

## II. IN PRESENTING THE SETTLEMENT FOR APPROVAL AND SEEKING TO RELEASE CERTIFICATEHOLDERS' RIGHTS, BONY HAS DUTIES INDEPENDENTLY ARISING UNDER NEW YORK COMMON LAW.

As described above, the TIA circumscribes BONY's ability to exculpate itself through language in the PSA from obligations to certificateholders, particularly "post-default." Here, the deficiencies that BONY, as Trustee, purports to settle rather than prosecute against BOFA and Countrywide are based on "defaults" in their performance under the PSA, so that the Article 77 proceeding necessarily invokes the Trustee's broader duties to certificateholders. These duties, while "emerg[ing] from a relationship of trust and confidence created by a contract," are independent of it, and when breached, constitute a tort under New York law. *See, e.g., Bullmore*, 485 F. Supp. 2d at 469-70.

Although BONY has defined itself as little more than a "stakeholder" in presenting the settlement for approval through the Article 77 proceeding, and argues that it generously gave notice to certificateholders to solicit their views on the reasonableness of the settlement (Tr. at 31-32), the proposed final order[4] presented to Judge Kapnick belies this characterization of the Article 77 proceeding and its notice regimen. Pursuant to the proposed final order, the Court will not only be declaring that the settlement is in the "range of reasonableness" as BONY contends (Tr. at 16), but, relying upon the jurisdiction obtained by providing the notice to certificateholders, the order will "release" certificateholders' tort claims ***against BONY*** -- particularly for its less than vigorous, and conflicted,[5] advocacy of certificate-holders' interests

---

[4] A copy of the proposed final order is attached as Exhibit C to the Schwartz Decl.

[5] As described in the Complaint in the Related Action, BONY shares responsibility for the Trusts' losses because it failed to properly examine the mortgage loan files at the initiation of the Trusts and failed to demand that the facially defective mortgage loans be substituted or repurchased. *See* Complaint ¶¶54-64, 67-71, 76. As Gibbs and Bruns' counsel described at the Hearing (Tr. at 62), and in its October 18, 2008 letter (Exhibit B), BONY also refused to act to provide notice of known, wide-spread violations of breaches of the underwriting representations and warranties, that would have given rise to "events of default" and the Trustee's right and

in negotiating a settlement as their representative (Ex. C at ¶¶ p, q, s), but purportedly not as their "fiduciary." (Tr. at 11).

It is well established that New York law recognizes claims sounding in tort for the negligent performance of duties that arise out of a relationship established by contract, and that where this occurs the common law policies of the State, not the contract, is the "source" of those obligations. This is described by the New York Court of Appeals in *Sommer v. Federal Signal Corp.*, 79 N.Y. 2d 540 (1992), and its progeny:

> Between actions plainly **ex contractu** and those as clearly **ex delicto** there exists what has been termed a border-land, where the lines of distinction are shadowy and obscure, and the tort and the contract so approach each other, and become so nearly coincidental as to make their practical separation somewhat difficult.
>
> * * *
>
> A legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship . . . In these instances, it is policy, not the parties' contract, that gives rise to a duty of due care.

*Id.* at 550-51 (internal citations omitted). *See also Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgt. Inc.*, 80 A.D.3d 293, 306, 915 N.Y.S.2d 7, 9 (N.Y. 2010) ("With respect to plaintiff's gross negligence claim, 'a legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship.'") (citing *Sommer*, 79 N.Y.2d at 551); *Bullmore v. Ernst & Young Cayman Is.*, 45 A.D.3d 461, 846 N.Y.S.2d 145, 148 (N.Y. 2007) ("Professionals such as investment advisors, who owe fiduciary duties to their clients, 'may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties,' since in 'these

---

**obligation** to sue Countrywide and BOFA under its "second tier" of post default obligations -- lawsuits that would have further revealed and established certificateholders' claims against BONY as well. In light of this glaring conflict of interest, it is hardly surprising that BONY would have preferred a quiet "settlement" of certificateholders' rights to litigation, and seeks a "release" of Certificateholders' claims against it in the final order presented to Judge Kapnick.

instances, it is policy, not the parties' contract, that gives rise to a duty of care.'") (citing *Sommer*, 79 N.Y.2d at 551-52).

Tort claims against an Indenture Trustee that are separate from breach of contract claims arising under a Trust Indenture are available under New York common law for violation of the Implied Covenant of Good Faith and Fair Dealing, as well as breach of fiduciary duty when duties independent of the contract itself are violated and the claims for damages are not intrinsically tied to the breach of specific provisions in the contract. *Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10 Civ. 25 (PGG), 2011 WL 3251554, at *11, *13 (S.D.N.Y. July 28, 2011). *And see Wells Fargo Bk. N.W., N.A. v. Sundowner Alexandria, LLC*, No. 09 Cv. 7313, 2010 WL 3238948, at *4, n. 3 (S.D.N.Y. Aug. 16, 2010) (A claim for breach of the implied duty of good faith is not redundant, "where the party does something to 'destroy or injure the right of another party to receive the benefits of the contract.'"); *Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 2667 (LMM), 2007 WL 2454109, at *3 (S.D.N.Y. Aug. 20, 2007) ("[P]laintiffs' claim of a breach of the covenant of good faith and fair dealing depends on facts in addition to those that might support a breach of contract claim, and their claim is not duplicative of the breach of contract claim.").

## CONCLUSION

For the reasons stated herein, the Article 77 proceeding involves duties on the part of BONY which the TIA and New York law do not permit BONY to waive, and these duties of due care and loyalty arise under, and are governed by, the common law of New York.

DATED:   New York, New York             Respectfully submitted,
           September 27, 2011

                                                  /s/ Beth A. Kaswan
                                                  Beth A. Kaswan (BK-0264)
                                                  Max R. Schwartz (MS-2517)
                                                  SCOTT+SCOTT LLP
                                                  500 Fifth Avenue, 40th Floor

        New York, NY  10110
        Tel: 212-223-6444
        Fax: 212-223-6334
        Email:      bkaswan@scott-scott.com
            mschwartz@scott-scott.com

*Counsel to Public Pension Fund Committee*

11

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed this 27th day of September, 2011, via this Court's electronic filing system, and served via ECF notice on all parties registered to receive such notice. Parties not so registered have been served via Regular Mail.

/s/ Beth A. Kaswan
Beth A. Kaswan (BK-0264)
SCOTT+SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY  10110
Tel: 212-223-6444
Fax: 212-223-6334
Email:  bkaswan@scott-scott.com

*Counsel to Public Pension Fund Committee*