UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
In the matter of the application of   :
                                      :
THE BANK OF NEW YORK MELLON, (as      :
Trustee under various Pooling and Servicing :
Agreements and Indenture Trustee under :
various Indentures) *et al.*,         :   Case No.  11-cv-5988 (WHP)
                                      :
         Petitioners,                 :
                                      :
         -against-                    :
                                      :
WALNUT PLACE LLC *et al.*,            :
                                      :
         Intervenor-Respondents.      :
                                      :
------------------------------------- X


**THE BANK OF NEW YORK MELLON'S SUR REPLY MEMORANDUM OF LAW IN OPPOSITION TO JOSEPH R. BIDEN, III'S, ATTORNEY GENERAL OF THE <u>STATE OF DELAWARE, PETITION TO INTERVENE</u>**


DECHERT LLP                          MAYER BROWN LLP
Hector Gonzalez                      Jason H. P. Kravitt
James M. McGuire                     Matthew D. Ingber
1095 Avenue of the Americas          1675 Broadway
New York, New York 10036             New York, New York 10019
(212) 698-3500                       (212) 506-2500

*Attorneys for Petitioner*
*The Bank of New York Mellon*

## **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Conn. v. Physicians Health Servs.*,
   287 F.3d 110 (2d Cir. 2002)..................................................................................4

*Jimenez v. Quarterman*,
   555 U.S. 113 (2009).................................................................................................1

**STATUTES**

28 U.S.C. § 1715...............................................................................................1, 2, 3, 4

28 U.S.C. § 1332..............................................................................................................2

**OTHER AUTHORITIES**

Sen. Rep. No. 109-14 (2005),
   *reprinted in* 2005 U.S.C.C.A.N. ......................................................................2, 3

Petitioner The Bank of New York Mellon ("BNYM") submits this sur reply memorandum of law in opposition to the Reply Memorandum of Joseph R. Biden, III, Attorney General of the State of Delaware ("DAG"), In Support of its Petition to Intervene ("Reply").[1]

## ARGUMENT

In its Reply, the DAG raises a new argument to support its Petition to Intervene. The DAG argues that because the Court "has determined that the matter fits within the definition of a 'mass action'," the "provisions of the Class Action Fairness Act ("CAFA") in conjunction with the Delaware DOJ's power to take action whenever necessary for the protection of state interests give the Delaware DOJ standing to intervene and object to the proposed settlement." (Reply at 2). The DAG's sole basis for its standing argument is 28 U.S.C. § 1715(b)'s requirement that "notice of any proposed class action settlement [must be provided] to the appropriate state official, which in most cases is the State attorney general." (*Id.* at 3). That argument fails because (1) this proceeding is not considered a class action for any purpose—including § 1715's notice provision—other than for determining the Court's jurisdiction under CAFA, and (2) even if this proceeding were considered a "class action" under § 1715, that section does not confer standing to intervene.

First, while the Court determined that this matter constitutes a "mass action" for purposes of CAFA's jurisdictional provisions, it does not follow that this matter constitutes a "class action" for purposes of § 1715. To the contrary, CAFA makes clear that this matter cannot be considered a class action for any purpose other than determining the Court's jurisdiction under CAFA. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of

---

[1] At the November 3, 2011 status conference, the Court granted BNYM leave to file a sur reply in response to the Reply.

statutory interpretation," the analysis must "begin[] with the plain language of the statute."). Section 1332(d)(1)(B) defines a class action as "any civil action filed under [R]ule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]" This matter does not qualify as a traditional class action because it was not commenced pursuant to Rule 23 or a similar state counterpart. (*See* Dkt. 1-1 (Verified Pet)). Section 1332(d)(11)(A) provides further that "[f]or purposes of this subsection and section 1453, a mass action shall be deemed a class action removable under" that statute. (Emphasis added). Accordingly, CAFA provides that a mass action will be deemed a "class action" for CAFA's jurisdictional provisions only; neither § 1332 nor any other provision in CAFA expands a mass action's identity as a class action beyond § 1332(d)(11) or § 1453. Congress's intent to limit a mass action's identity as a class action solely for determining jurisdiction is clearly set forth in CAFA's legislative history. *See* S. Rep. No. 109-14 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 44 ("Under subsection 1332(d)(11), any civil action in which 100 or more named parties seek to try their claims for monetary relief together will be treated as a class action for jurisdictional purposes.") (Emphasis added).

Conversely, the DAG has cited no authority that a mass action is deemed a "class action" for purposes of 28 U.S.C. § 1715. For instance, 761 PLI/lit 11, 2007 Overview of the Class Action Fairness Act, the sole authority cited by the DAG, demonstrates precisely the opposite. The statement quoted by the DAG—"Under the mass action provision, if the requirements generally pertaining to class actions are met, the action is treated as though it were a class action . . ."—refers to CAFA's jurisdictional provisions and cites to § 1332(d)(11)(A) to support its assertion. (Reply at 2-3)

2

Second, even if this purported mass action were considered a "class action" for purposes of § 1715, it does not follow that a notice provision should be construed to grant the DAG standing to intervene in a proceeding where it otherwise has no standing.  The plain text of § 1715 requires merely that a defendant provide the applicable state and federal officials with notice of a proposed settlement and explicitly states that "<u>[n]othing in this section shall be construed to expand the authority of . . . Federal or State officials</u>."  28 U.S.C. § 1715(f) (emphasis added).  CAFA's legislative history confirms that § 1715 does not grant state or federal officials any new authority.  In approving CAFA, the Senate Committee on the Judiciary's report asserted that "state and federal officials are not required to take any affirmative action once they receive the proposed settlement according to new section 28 U.S.C. § 1715(f); <u>nor does this section expand their current authority in any respect</u>."  *See* Sen. Report No. 109-14, at 34 (emphasis added).

In its Reply, the DAG ignores Congress's purpose in enacting § 1715's notice provision.  According to the legislative history, § 1715 was "intended to combat the 'clientless litigation' problem by adding a layer of independent oversight to prohibit inequitable settlements."  Sen. Report No. 109-14, at 33.  Congress was concerned with "[a]busive class action settlements in which plaintiffs receive promotional coupons or other nominal damages while class counsel receive large fees . . . ."  *Id.* at 32.  Here, the proposed settlement does not involve any concerns about "clientless litigation," which predicated § 1715's enactment.  The DAG's attempt to construe a straightforward notice requirement as a source of substantive law to establish standing to intervene as a party is without merit.  Under the DAG's reading of the statute, it would have automatic standing to intervene in every proposed class action settlement brought pursuant to

3

CAFA. As explained in the legislative history, Congress never intended to expand the authority of state or federal officials, let alone confer Article III standing, through the notice provision.

Finally, BNYM has found no authority (and the DAG cites none) to support the contention that the right to receive notice of a class action settlement, pursuant to § 1715, grants to a state official standing to intervene in that proceeding.[2]

## CONCLUSION

For all of the foregoing reasons, the Court should deny the DAG's petition to intervene in this proceeding.[3]

Dated:   New York, New York
         November 9, 2011

|  |  |
|---|---|
| | */s/ Matthew D. Ingber* |
| DECHERT LLP | MAYER BROWN LLP |
| Hector Gonzalez | Jason H.P. Kravitt |
| James M. McGuire | Matthew D. Ingber |
| 1095 Avenue of the Americas | 1675 Broadway |
| New York, New York 10036 | New York, New York 10019 |
| (212) 698-3500 | (212) 506-2500 |

*Attorneys for Petitioner*
*The Bank of New York Mellon*

---

[2]   *Connecticut v. Physicians Health Services*, the only case cited by the DAG, is inapposite. *See* 287 F.3d 110, 112 (2d Cir. 2002) (not discussing 28 U.S.C. § 1715 and affirming dismissal of action because the Connecticut attorney general lacked standing to sue and could not bring the suit in a *parens patriae* capacity).

[3]   At a minimum, as BNYM requested at the November 3 status conference, the Court should reserve decision on the DAG's intervention motion pending a ruling from the Court of Appeals on BNYM's petition for permission to appeal the Court's order denying the remand motion.